CARL E. MOLLER et al., Respondents, *v.* CLARE A. PICKARD et al., Appellants.

**Attorney and client — action to impress trust upon purchase by attorney of minority stockholders and another of a majority of the corporate stock — when conclusions that a trust should be decreed and accounting directed not sustained by findings — findings of fact cannot be overborne by evidence of other facts not found — conflict of findings.**

1. While it is the duty of an attorney employed to find a purchaser for stock of a corporation in which his clients are interested to make full disclosure to them and retain nothing for himself without their knowledge and approval and the burden is on him to prove that all was fair and open, that burden is sustained where the findings present a case of purchase in response to the clients' request, after long solicitation, with the fullest understanding and approval of every detail of the transaction.

2. In an action by minority stockholders of a corporation to impress a trust upon the purchase of a majority of the stock by their attorney and another, findings of fact that at the time of the purchase the corporation was practically insolvent; that the acquisition of the stock "was with the full consent, knowledge and approval of the plaintiffs" and "in consequence of" their "solicitation and request," and refusals to find either lack of consent or fraud or deceit, do not sustain conclusions of law that a trust should be decreed and an accounting directed.

3. Findings of fact cannot be overborne by facts of mere evidential value and equivocal significance from which different ultimate facts might conceivably have been found but were not. Where conflict exists in findings of fact those most favorable to the appellant are controlling on this court.

*Moller v. Pickard,* 197 App. Div. 333, reversed.

(Argued December 15, 1921; decided January 10, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 14, 1921, modifying and affirming as modified a final judgment in favor of plaintiffs entered upon the report of a referee, with notice of intention to bring up for review the affirmance by the Appellate Division

for the fourth department of an interlocutory judgment entered upon the report of a referee establishing a trust and directing an accounting.

*C. A. Pickard, Frank H. Mott* and *H. V. N. Bodine* for appellants. Inconsistent findings must be resolved in appellants' favor. (*Whalen* v. *Stuart*, 194 N. Y. 495.) The facts do not support the interlocutory judgment that plaintiffs are entitled to assert a trust. (*Matter of Holland*, 110 App. Div. 799.)

*Robert H. Jackson* and *Benjamin S. Dean* for respondents. The burden of proving that there was no fraud, influence or mistake, that the transaction was perfectly understood by plaintiffs and that a third and disinterested person advised plaintiffs of all their rights is upon defendants. They have not carried the burden and the transaction is, therefore, deemed by law to be fraudulent. (*Nesbit* v. *Lockman*, 34 N. Y. 167; *Matter of Smith*, 95 N. Y. 516; *Cowee* v. *Cornell*, 75 N. Y. 91; *Green* v. *Roworth*, 113 N. Y. 462; *Barnard* v. *Gantz*, 140 N. Y. 249; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 341; *Goldberg* v. *Goldstein*, 87 App. Div. 516; *Kissam* v. *Squires*, 102 App. Div. 536; *Begen* v. *Pettus*, 223 N. Y. 662.) Even if the transaction were affirmatively found free from actual fraud, it is voidable in equity at option of plaintiffs because of their relationship. (*Sears* v. *Shafer*, 6 N. Y. 268; *Ford* v. *Harrington*, 16 N. Y. 293; *Case* v. *Carroll*, 35 N. Y. 385; *Dutton* v. *Willner*, 52 N. Y. 312; *Bain* v. *Brown*, 56 N. Y. 285; *Fisher* v. *Bishop*, 108 N. Y. 25; *Hoes* v. *N. Y., N. H. & H. R. R. Co.*, 173 N. Y. 441; *Selwyn* v. *Waller*, 212 N. Y. 507; *Turnbull* v. *Banks*, 22 App. Div. 508; *Matter of Fitzsimons*, 77 App. Div. 345.) The appellant Pickard, having become interested in the subject-matter of his employment adversely to his client, and become a purchaser of it, and in the promotion of his own interests having used the information gained in

his professional capacity, the transaction is voidable in equity. (*Case* v. *Carroll*, 35 N. Y. 385; *Lingke* v. *Wilkinson*, 57 N. Y. 445; *Peck* v. *Peck*, 110 N. Y. 64, 72; *Nichols* v. *Riley*, 118 App. Div. 404; *Matter of Flannery*, 150 App. Div. 369; *Reis* v. *Volck*, 151 App. Div. 616; *May* v. *Hettrick*, 181 App. Div. 3.)

CARDOZO, J.   In the years 1915 and 1916 the Monarch Stationery & Paper Company, Inc., was engaged in the stationery business in Jamestown, New York.   Its capital stock consisted of 101 shares of $100 each.   One Hugh Rogers controlled the business, forty-nine shares standing in his name, one share in the name of his wife, and one in that of his attorney, Curtiss.   The plaintiffs, Moller and Bloomquist, owned, each of them, twenty-five shares, and were thus minority stockholders.   In 1915 the business, which had been organized in 1912, seemed to be a failure, and insolvency was imminent.   Rogers, who had loaned $4,000 to the company, and was an indorser on $10,000 of its notes, threatened to oust the plaintiffs as directors, and deprive them of their salaries.   They consulted the defendant Pickard, a member of the bar, and were advised to find a purchaser for the shares which gave Rogers the control.   Pickard undertook to aid them in the quest, and finally brought the project to the notice of the defendant Mason.   In the meantime, Rogers had died and Curtiss was the executor of the will.   The plaintiffs were anxious that Mason should buy, and promised, if he bought, not to hamper his control.   Later, Moller succeeded in enlisting a relative's support, and made an offer of $7,500, which Curtiss did not accept.   There was continued pressure upon Mason to buy and upon Pickard to assist.   Both Bloomquist and Mason, it is found, had already demonstrated their incapacity for the responsibilities of management.   They understood, and so stated to Pickard, that the value of their shares

18

was gone unless the company could be saved by the infusion of new blood. Their importunities at last prevailed. On March 28, 1916, Mason and Pickard, acting together, made an offer of $7,650; the offer was accepted, and the sale was made.

The new management set to work to build up the shattered business. The company was then substantially insolvent as it had been for months before. The stock had little or no present value. Only energy and ability could rescue something from the threatened wreck. Mason became president, and Pickard treasurer. Moller was discharged in April, 1916, and Bloomquist, it seems, resigned. The business quickly responded to the new direction. At the time of the trial, three years after the sale, the stock had a value of over $200 a share. The transformation was due to the defendants' efforts.. The plaintiffs had, indeed, lost their offices· and salaries, but as stockholders they shared with the defendants in the enhanced value of the stock. With the business safely re-established, they decided that they would like to own not merely a part of it, but the whole. The purchase of an interest in the shares by Pickard was asserted to be a betrayal of his trust. His offer of $7,650 became a covinous and selfish effort to forestall acceptance of Moller's bid, and gain title for himself. In June, 1917, this action was begun. The relief demanded was the declaration of a trust in respect of the interests of both defendants, Mason as well as Pickard, in the subject-matter of the sale. Such a trust was decreed by an interlocutory judgment, and an accounting was directed, upon which final judgment followed.

We think the conclusions of law are unsupported by the findings. Unquestionably it was Pickard's duty to make full disclosure to his clients, and to retain nothing for himself without their knowledge and approval (*Gardner* v. *Ogden*, 22 N. Y. 327). Unquestionably the burden was on him to prove that all was fair and open (*Nesbit*

v. *Lockman,* 34 N. Y. 167). We must hold that, upon the findings, the burden was sustained. The case, as the findings present it, is not one of selfish or malign endeavor on the part of an attorney to gain title for himself to the injury of a client. It is one of a purchase in response to the client's request, after long solicitation, with the fullest understanding and approval of every detail of the transaction. " On the morning of March 28, 1916," when the contract of sale was made, the plaintiffs knew " that Pickard was to assist Mason in the purchase and assented to it." On the same day, when a meeting of the stockholders was held, the plaintiffs knew that Pickard was acquiring an interest in the corporation, " and made no objection thereto." " They fully understood how the purchase of the Rogers' interests was being made, and they consented to the same." The findings ring the changes on the theme. Mason had explained that without Pickard's assistance, it would be impossible for him to buy. Pickard " after some reluctance " had finally consented on the morning of March 28 to give the needed aid. Bloomquist was present when the consent was given, but Moller attended a conference at Pickard's office later in the day. At this conference Moller learned everything that " had taken place," and that $7,650 was the price. Both Moller and Bloomquist " understood that. Mason could not finance the deal alone, and that Pickard was going to have some portion of Mason's 51% of the stock." They " understood at that meeting at Pickard's office the details of the transaction," understood that " Mason and Pickard were going to buy all of the Rogers stock," and " knew the basis upon which the said stock was to be bought." At that meeting " a thorough understanding was reached as to what was to be done at the meeting [of the stockholders] to follow." " All the transactions leading up to the acquisition by defendants of the Rogers interest were had at the request of the plaintiffs." The acquisition of that interest " was

with the full consent, knowledge and approval of the plaintiffs." It was not only with their approval; it was "in consequence of" their "solicitation and request." In line with these findings are the refusals to find. The referee refused to find that the plaintiffs never consented to the purchase of the stock by Pickard, refused to find that the latter's purchase of the stock "was consummated by reason of fraud practiced upon the plaintiffs," and refused to find that his conduct "was calculated to deceive."

Stress is laid by the plaintiffs on other and evidential facts which are thought to justify an inference of deception or concealment. We do not need to consider whether they have the tendency ascribed to them. If the suggested inference was possible, the referee refused to draw it. He has found, not concealment and deception, but solicitation, knowledge and approval. These are the ultimate facts which must control and shape the judgment. They cannot be overborne by facts of merely evidential value and equivocal significance, from which different ultimate facts might conceivably have been found, but were not (*Dougherty* v. *Lion Fire Ins. Co.*, 183 N. Y. 302; *Miller* v. *N. Y. & N. S. R. Co.*, 183 N. Y. 123; *Alcock* v. *Davitt*, 179 N. Y. 9). We see no conflict in the findings, and certainly none that may not readily be reconciled. If conflict exists, those most favorable to the appellants are controlling on us here.

In view of the conclusion thus reached, we do not stop to consider whether the constructive fraud of Pickard, if it were proved, would justify the declaration of a trust against the interest of Mason.

The judgments, interlocutory as well as final, should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.