■ E. STEFAN ROGERS et al., Appellants, v ANGELO NIFORATOS et al., Respondents.—Appeal from a judgment of the Supreme Court, entered May 17, 1976 in Otsego County, upon a verdict rendered at a Trial Term in favor of the defendants. Plaintiffs are a lawyer and two accountants who represented the defendants in connection with a contract to purchase a motel with bar and restaurant facilities located in Oneonta, New York. The

purchase price of $850,000 was to be financed by payment of $150,000 in cash, $285,000 through personal notes to the seller secured by a purchase-money mortgage, and by acquiring the business subject to an aggregate of $415,000 in outstanding mortgages held by two banks. The motel was operated in corporate form and the contract provided for the sale and transfer of the entire capital stock to these defendants by one Joseph G. Monser, the sole stockholder. Although the date of closing was set for December 13, 1973, the fiscal year of the motel ended October 31, 1973, and defendants had been in possession conducting business since November 1, 1973 in order to familiarize themselves with its operation. When the date for closing arrived, the defendants announced that they did not want to consummate the transaction, contending that their analysis of the corporate books and records revealed gross receipts during the prior fiscal year of only $480,000, far less than an expected sum in excess of $600,000 as represented by the seller. The closing was adjourned for 24 hours during which extensive and prolonged discussions took place between these plaintiffs and the defendants. This finally culminated in a proposal that if the defendants could not obtain a release from their agreement with Monser, the plaintiffs would purchase the facility from the defendants upon the terms of the original agreement except at a reduced price of $800,000, with a down payment of only $25,000. The closing took place on December 14, 1973 and the next day plaintiff Rogers, an attorney, drafted a handwritten contract embodying the basics of the agreement between these parties which was signed by all concerned with the idea that a more formal contract would be prepared at a later date. The handwritten document contained, in part, the following provisions: "1—The sellers agree to sell the 100 shares of stock to the purchasers * * * *subject to* the outstanding obligations due to the Mohawk National Bank of Schenectady, the Small Business Administration and National Commercial Bank & Trust Company, and to Joseph G. Monser * * * 6—The subject *common stock* herein to be sold and to be assigned shall be *subject to* all the provisions of the agreement between the sellers herein and Joseph G. Monser". (Emphasis supplied.) The defendants say it was their understanding that the plaintiffs would assume personal responsibility on the obligations to Monser. Since the proposed formal contract submitted by plaintiffs contained no such assurance, defendants refused to execute it. The plaintiffs contend that, in accordance with the language of the handwritten instrument, they had agreed to purchase the corporate stock from defendants "subject to" those obligations without assuming personal liability to Monser. Plaintiffs thereupon commenced this action for specific performance to compel the defendants to execute the formal contract, comply with the terms of the handwritten agreement, and transfer the corporate stock. The defendants counterclaimed for specific performance asking that plaintiffs be required to purchase the corporate stock on the same terms and conditions as set forth in the original agreement between themselves and Monser, and that they receive money damages. The action was tried and, at the conclusion thereof, the court instructed the jury that their verdict should be for specific performance of the handwritten agreement in favor of either the plaintiffs or the defendants, and that they should answer the following question yes or no: "Did the agreement reached between the parties include the assumption of personal liability of the Monser indebtedness by the plaintiffs?" The jury found in favor of the defendants and answered the question in the affirmative. On this appeal plaintiffs assert, among other things, that the words "subject to" excluded, as a matter of law, any possibility of personal responsibility on their part. In

the ordinary case it is undoubtedly true, as the plaintiffs argue, that the interpretation of contractual terms involves no question for resolution by a trier of fact, and that the critical language employed here does not give rise to the assumption of a mortgage *(Bethelehem Steel Co. v Turner Constr. Co.,* 2 NY2d 456, 460; *Schwartz v Cahill,* 220 NY 174, 179). However, this is not the ordinary case. The handwritten contract was drawn by an attorney upon whom a heavy burden of proof rested to show a full disclosure of all relevant matters to his former clients *(Moller v Pickard,* 232 NY 271; *Frost v Bachman,* 259 App Div 745, affd 283 NY 744; 3 NY Jur, Attorney and Client, § 69; Code of Professional Responsibility, DR 5-104 [A]). Moreover, an issue of facts arises when contract provisions are ambiguous or equivocal and extrinsic evidence is admissible to develop the surrounding conditions so that the issue may be determined *(Lachs v Fidelity & Cas. Co. of N. Y.,* 306 NY 357, 364, mot for rearg den 306 NY 941; *Piedmont Hotel Co. v Nettleton Co.,* 263 NY 25, 30; 10 NY Jur, Contracts, §§ 219, 220). We do not think the words "subject to" were entirely free of ambiguity in the context presented, particularly since common stock, unlike realty, was being transferred and the prior contract with Monser was specifically mentioned when there was no pressing need to do so. Whether plaintiffs meant to assume defendants' burden was a factual question and, from an examination of the entire record, we find no reason to disturb the answer supplied by the trier of fact. We have examined plaintiffs' remaining arguments and conclude that they lack merit. Although not addressed by the parties, we feel compelled to comment upon the procedural questions that surface when a jury is utilized in an equitable action and a judgment is thereafter entered (CPLR 4101, 5016, subd [c]). While normally their verdict would be advisory only and the court would be required to render a written decision (CPLR 4212, 4213; *Ruder v Lincoln Rochester Trust Co.,* 18 AD2d 763; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4101.05), the parties may, by stipulation or conduct, chart their own course of procedure at the trial *(Schoenfeld v Atomic Prods. Corp.,* 35 NY2d 880; *Cullen v Naples,* 31 NY2d 818). Judgment affirmed, with costs. Greenblott, J. P., Sweeney, Kane and Main, JJ., concur; Mahoney J., concurs in the result only.