Philip J. Meathe et al., Respondents, v State University Construction Fund, Appellant.

Third Department, December 7, 1978

APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (Richard J. Dorsey* and *Ruth Kessler Toch* of counsel), for appellant.

*Brennan, Centner, Palermo & Blauvelt (Thomas E. Goldman* of counsel), for respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

In 1969 defendant initiated plans to construct buildings at the campus located at Stony Brook. Plaintiffs, an architectural firm and its president, were contacted because of their expertise in the so-called "fast track" method of construction by which actual construction is commenced prior to the completion of all design, planning, bidding and subcontracting stages in order to alleviate the effects of inflation. After conferences between representatives of the plaintiffs and defendant, agreements were entered into for the construction of two buildings, known as the Surge Building and the Chemistry Building. Under the "fast track" method of construction, plaintiffs were required to perform those services ordinarily performed by the general contractor in addition to the normal architectural services. As a result, the standard form contract used by defendants in contracting with architects was substantially modified.*

Article III of the standard contract pertained to payment for services and contained three parts. Part A provided for basic compensation using a percentage of the construction costs methodology, part B provided a timetable for payment of basic compensation and part C provided for extra compensation on a cost plus basis for certain services rendered by the architect. Part A remained unchanged in the contracts in question, but part C was modified to some extent. Article XIII, entitled "Compensation of Architect" was added to the standard contract for both the Surge Building contract and the Chemistry Building contract and provides for compensation on a cost plus basis as follows: "As the total compensation for all the services rendered by the Architect under the provisions of this Agreement, the Fund shall pay to the Architect a sum equal to the Architect's direct labor costs, plus a sum equal to 150% thereof, plus the Architect's direct material costs of

---

* For the purposes of this appeal, the provisions of both the Surge Building contract and the Chemistry Building contract are virtually identical.

rendering such services. The amount of the direct labor and material costs and reimbursable travel and telephone expenses incurred in connection with the rendition of the services required hereunder shall be computed and paid for by the Fund commencing with June 16, 1970. Notwithstanding any other provisions of this Agreement, the total compensation and reimbursable travel and telephone expenses shall not exceed the amount that the Architect would have received as a 'Total Fee' under the Subdivisions 1, 2 and 3 of Section A of Article III had such provisions been applicable, plus a sum equal to 2% of the construction cost of the Project."

During the course of the work on the projects, plaintiffs submitted invoices for services rendered and expenses incurred, and payments were made by defendant. Prior to completion of the work, defendant's staff auditors conducted interim audits and, as a result of these audits, defendant refused to make further payments to plaintiffs. Following completion of the two buildings, plaintiffs commenced this action seeking to recover moneys due pursuant to the contract. Defendant counterclaimed, contending that plaintiffs had been overpaid. Following a nonjury trial, judgment was entered in favor of plaintiffs for the entire amount claimed and defendant's counterclaims were dismissed. Defendant appeals only from so much of the judgment as awarded plaintiffs monetary relief.

■ The central issue on this appeal involves the interpretation of the "upset provision" of article XIII which seeks to set a limit on the total compensation to plaintiffs under the cost plus method by reference to the percentage of construction cost method contained in part A of article III. Defendant contends that this upset provision is clear and unambiguous and applies to all compensation, including payments for extra services provided for in part C of article III. Plaintiffs contend that the compensation for extra services provided for in part C is not affected by the upset provision of article XIII. The trial court concluded that the contracts were ambiguous and allowed extrinsic evidence as to the meaning of the provisions pertaining to compensation. Defendant contends that the court erred in so doing. We disagree.

The fact that the contracts contain two articles pertaining to compensation, one based on cost plus (art XIII) and the other on a percentage of the construction costs (art III), is strong evidence of ambiguity. While article XIII refers to part A of article III, and in fact appears to replace it except for

calculation of the upset limit, no reference is made to part C, which provides for compensation for extra services. Defendant's contention that the contracts are plain and unambiguous because article XIII places an upper limit on "total compensation" and thus applies to all compensation, including that for extra services, is not persuasive. In the standard contract, part A provided for calculation of the "Total Fee", but clearly did not exclude compensation for extra services provided in part C. Thus, a question exists as to whether "total compensation" in article XIII similarly does not exclude extra compensation under part C. Moreover, article XIII specifically refers to "total compensation and reimbursable travel and telephone expenses" in the upset provision, and travel and telephone expenses are only two of the numerous extras listed in part C of article III. The question arises as to why the draftees of article XIII would have specifically referred to travel and telephone expenses if the upset provision were to apply to all part C extras. Finally, defendant's contention that part C of article III was intended simply as a listing of the extra services to be performed by plaintiffs is unpersuasive in light of article XII, entitled Construction Management Services, which was added to the standard contract for the Surge Building and Chemistry Building contracts. Accordingly, we conclude that the trial court did not err in holding that the contract provisions pertaining to compensation were ambiguous. Having so concluded, we also find the extrinsic evidence offered by plaintiffs to explain the ambiguity admissible *(67 Wall St. Co. v Franklin Nat. Bank,* 37 NY2d 245, 248-249; *Rogers v Niforatos,* 57 AD2d 984, 986).

Where, as here, the meaning of an agreement is ambiguous, its construction is an issue to be resolved by the fact finder *(O'Neil Supply Co. v Petroleum Heat & Power Co.,* 280 NY 50, 56; *Ehrlich v Abrams Instrument Corp.,* 53 AD2d 825, 826). Plaintiff Meathe and two former deputy general managers of defendant, all of whom participated in the negotiations preceding the execution of the contracts for construction of the Surge Building and Chemistry Building, testified that the upset provision contained in article XIII was not intended to apply to the compensation for extra services provided for in part C of article III. Defendant offered no evidence to the contrary. There is, therefore, ample evidence in the record to support the trial court's finding that plaintiffs were entitled to compensation for extra services.

█ Next, defendant contends that plaintiffs added some $49,000 to the upset limit of the Chemistry Building contract for extra services which were not authorized by defendant as reimbursable under that contract and that the trial court, therefore, erred in its award of damages. We agree. The summary sheet prepared by plaintiffs specifically notes that defendant has not agreed to inclusion of the fees for extra services in the Chemistry Building contract, and the correspondence submitted by plaintiffs to establish defendant's authorization is equivocal at best. Thus, we conclude that plaintiffs have not met their burden of establishing that they were entitled to reimbursement for these services under the Chemistry Building contract, and the judgment should be modified accordingly.

Finally, defendant contends that four types of billings under the contracts were in violation of the terms of the contracts and, therefore, should have been disallowed. The basis for this contention is an audit conducted by defendant's staff, but an independent accountant retained by defendant criticized the audits, and there is evidence in the record which supports the trial court's refusal to disallow the expenses.

The judgment should be modified, on the facts, by reducing the award of damages on the first cause of action from $199,369.44 with interest to $150,369.44, with interest and by reducing the total award accordingly, and, as so modified, affirmed, without costs.

HERLIHY, J. (dissenting). The critical issue in the present case is whether or not there is any ambiguity in regard to provisions of these contracts as set forth in article XIII thereof. The issue is one of law and, unless ambiguity appears from the face of the document, parol evidence as to intent is inadmissible.

The plaintiffs did not seek any remedy based upon the theory of mistake, either mutual or unilateral. Any and all services for which plaintiffs seek recovery are admittedly encompassed within the contracts at issue. Under such circumstances the parol evidence may not be considered as to the intention of the parties in regard to the compensation to be paid to plaintiffs unless there is some ambiguity.

These contracts provide in articles III and XIII for "[p]ayment for services" and "[c]ompensation of [a]rchitect". Article III had added to its caption a reference to article XII. Article

XIII "Compensation of Architect" contains in part the following language: "Notwithstanding any other provisions of this Agreement, the total compensation and reimbursable travel and telephone expenses shall not exceed the amount that the Architect would have received as a 'Total Fee' under Subdivisions 1, 2 and 3 of Section A of Article III had such provisions been applicable, plus a sum equal to * * * [1½ or 2]% of the construction cost of the Project."

Articles XII and XIII are typewritten additions to the printed agreement.

Upon its face that language is not ambiguous and, to the contrary, is explicit. Nevertheless, it is contended that the language is ambiguous when the contracts are considered in their entirety. In considering the plain meaning of these contracts, it is noted that they were approved *as written* by the State Comptroller pursuant to section 112 of the State Finance Law.

The entire article XIII is quoted in the majority opinion and even a cursory reading of it reveals no conflict in its provisions. The architect was to receive as a "fee" his direct labor costs plus 150% thereof (typewritten change from 100% to 150%). He was also to be reimbursed for direct labor and material costs as well as travel and telephone expense. It does not appear to be suggested that there is any ambiguity as to article XIII being "total" compensation or fee and entirely controlling article III as to the total fee to be paid in the absence of applying the final "upset" sentence. Finally, the agreement does not have any inconsistencies as to the legal conclusion that article XIII was intended to control article III as to the total compensation in the absence of the upset provision.

The "notwithstanding" sentence or upset provision of article XIII is not, upon its face, inconsistent with any other provisions of article XIII or the remainder of the contract. It limited compensation to the total of the computation under part "A" of article III *plus* a percentage of the construction cost of the project. Under part "A" of article III the architect would not be reimbursed for any labor or other direct costs, but that was not unusual as regards a fee. While it would have been unusual not to provide for extra compensation for traveling and telephone expenses as well as other items provided in part "C" of article III, article XIII in its upset provision expressly adds an additional factor of a percentage

of the construction cost of the project. It is apparent that the further compensation was for all services and "cost plus" would have been intrinsically inconsistent with the limitation. Under such circumstances, the added typewritten provision to this otherwise printed form should prevail (see *Heyn v New York Life Ins. Co.,* 192 NY 1, 6; *National Bank of Westchester v Dogwood Constr. Corp.,* 47 AD2d 848, 849; *Trade Bank & Trust Co. v Goldberg,* 38 AD2d 405; *Feldman v Fiat Estates,* 25 AD2d 750, 751; *Laurino v Hewman,* 10 AD2d 725).

In any event, to find the limitation ambiguous is to nullify plain language when there is nothing about the contract which, upon its face, would appear misleading.

The judgment should be reversed, and the complaint dismissed.

SWEENEY and LARKIN, JJ., concur with MAHONEY, P. J.; KANE and HERLIHY, JJ., dissent and vote to reverse in an opinion by HERLIHY, J.

Judgment modified, on the facts, by reducing the award of damages on the first cause of action from $199,369.44 with interest to $150,369.44, with interest and by reducing the total award accordingly, and, as so modified, affirmed without costs.