HUEBER HARES GLAVIN PARTNERSHIP, Respondent, v STATE OF
NEW YORK, Appellant. (Claim No. 59460.)

Fourth Department, July 10, 1980

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Richard J. Dorsey* and *William J. Kogan* of counsel), for appellant.

*Bond, Schoeneck & King (Thomas R. Smith* and *Francis E. Maloney, Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

WITMER, J.

██ ██ For reasons stated herein we conclude that the trial court erred in denying the State's motion for permission to serve a counterclaim and thereafter in refusing to permit the State to introduce evidence tending to show that much of claimant's claim for extra work was performed only to cure design defects which were its own responsibility and not recoverable under its contract with the State; that the court also erred in construing the stated ultimate cost or ceiling price in the contract to be merely an estimate of total compensation; and that absent additional proof, claimant's recovery in any event cannot exceed such stated amount, and so it cannot exceed the sum of $9,783.90.

In March, 1966 claimant contracted with the State to provide architectural services in the design and construction of a State office building in the City of Utica. This contract was supplemented by four agreements as the work progressed. The original contract specified many duties for claimant to perform, primarily design work. The second supplement added to such list and also required claimant to supervise construction. In the original contract and in each of the supplements a ceiling price was specified, limiting the total amount which claimant might recover for its services. Prior to the fourth

contract supplement the State advised claimant by letter that it considered that much of claimant's time on the project under contract supplement II resulted from design errors for which claimant was not entitled to be compensated by the State. At that time contract supplement IV was under consideration, in which the sum of $504,000 was stated to be the ceiling for all compensation that claimant could receive under the contract, and the State advised claimant that in no event could the ceiling amount be raised. Thereafter claimant received compensation totaling the sum of $494,216.10; but it then submitted claims for an additional $42,000, which the State rejected, partly because other contractors (to wit, T. H. Green Electric Co., Inc. and Rouse Construction Corp.) were suing the State for damages claimed by them by reason of alleged design errors, which the State deemed were claimant's fault. The contract expressly excluded reimbursement to claimant for services necessitated by reason of claimant's fault or neglect.

In July, 1975 claimant filed notice of claim for a total additional amount of $50,786.87, much of which was based upon time that it spent preparing to resist the claims against the State by contractors Green and Rouse, founded upon alleged design errors. The State did not answer the claim. At that time claims against the State were deemed denied without answer (see former 22 NYCRR 1200.14), but if the State wished to file a counterclaim, it had 20 days in which to do so (see former 22 NYCRR 1200.15). In November, 1975 the State moved for joint trial of claimant's claim along with the claims by Green and Rouse, and it also moved for permission to file a counterclaim against claimant for damages in the sum of $1,500,000 by reason of claimant's negligence and breach of contract. The court granted the motion for joint trial but denied the State permission to file the counterclaim.

Following such denial, the State instituted an action against claimant in the Supreme Court for its damages by reason of claimant's alleged negligence and breach of contract. In 1977 the State renewed its motion to interpose its counterclaim, but the court again denied the motion, noting that the State had its action thereon pending in the Supreme Court; and it specified its reasons for not permitting, in effect, a transfer of the State's action to the Court of Claims (cf. *Forest-Fehlhaber v State of New York,* 74 AD2d 272, approving a Supreme Court order transferring from it to the Court of Claims an

action instituted by the State against a defendant whose claim against the State was pending in the Court of Claims).

At trial in 1978 the court refused to permit the State to raise as a defense its assertion that since the claim was based on services necessitated by claimant's own design errors, they were not compensable under the contract, and it refused to permit the State to submit evidence thereon in diminution of claimant's claim. The court so ruled because it found that the contract was divisible, and that defects in the design phase could not bar recovery for services performed in the construction phase (see 10 NY Jur, Contracts, §§ 255, 337).

■ The court erred in applying the principle of a divisible contract in this case; for it is not the State's position that claimant's breach of the design phase would excuse the State's performance of the construction phase. Rather, the State contends that the contract provides no compensation for claimant for time spent in correcting its own mistakes and hence that the claim is not within the scope either of the original contract or contract supplement II. Since the State's defense is not grounded on the principle that damages may not be recovered by one who himself has not fully performed, the concept of divisibility is irrelevant. Thus, the court erred in excluding the State's offer of proof of claimant's design errors. For the same reason the court erred in denying the State's late motion for permission to interpose its counterclaim for damages for claimant's alleged breach of contract and for negligent design (see *Fehlhaber Corp. & Horn Constr. Co. v State of New York,* 69 AD2d 362, 374). It is clear that the State instituted its action in the Supreme Court because the court denied its motion to file the counterclaim; and the existence of that action should not have been used at the trial to bar the State's defense against that claim. In addition, permitting filing of the counterclaim will result in judicial economy, because the issue of design error must be reached in resolving the main claim.

■ Moreover, we cannot agree that claimant may receive total compensation under the contract in an amount in excess of the $504,000 stated in contract supplement IV. The contract and the first three supplements thereto are clear and unambiguous on this point, because each states that the ceiling amount may be increased, but *only* by supplemental agreement. The last supplement omits this sentence, but any ambiguity resulting thereby must be construed against the

claimant in view of the circumstances surrounding its execution. Months before contract supplement IV was executed the State wrote a letter to claimant informing it that the proposed ceiling price of $504,000 in supplement IV would not be raised because "there are no funds available to additionally supplement this contract" and the sum stated in the fourth supplement "was to be sufficient to compensate your firm for the balance of the project." Thereafter contract supplement IV was executed fixing the ceiling of claimant's compensation at $504,000. The contract also provided that the State would not incur liability beyond "moneys available". Thus claimant has no right to total compensation in excess of $504,000 (*Starling Realty Corp. v State of New York*, 286 NY 272, 277-278; *Nieman-Irving & Co. v Lazenby*, 263 NY 91, 94; *Meathe v State Univ. Constr. Fund*, 65 AD2d 49, 53; 10 NY Jur, Contracts, § 276). We find that *Sorrentino v State of New York* (22 Misc 2d 330, mod 13 AD2d 5, affd 11 NY2d 695), relied upon by the trial court, is inapposite because in that case there was an ambiguity as to whether the upset price was intended as an estimate or a ceiling, and the surrounding circumstances indicated the former.

We also disagree that the record supports a finding that the State is estopped from relying on the contract ceiling price. Although the doctrine of equitable estoppel may be applied against the State (see *Bender v New York City Health & Hosps. Corp.*, 38 NY2d 662, 668; *Matter of 1555 Boston Rd. Corp. v Finance Administrator of City of N. Y.*, 61 AD2d 187, 192; cf. *Eden v Board of Trustees of State Univ. of N. Y.*, 49 AD2d 277, 283-284), it will not be applied without a showing that the defendant concealed facts from claimant or made a false representation to it and that claimant relied thereon (*Triple Cities Constr. Co. v Maryland Cas. Co.*, 4 NY2d 443, 448; *Special Event Entertainment v Rockefeller Center*, 458 F Supp 72, 76, and cases cited; 21 NY Jur, Estoppel, § 21). There has been no showing in this case that the State concealed facts from claimant or made any misrepresentation of fact to it upon which claimant relied to its detriment. The State's prior conduct in raising the ceiling amount cannot be viewed as misleading in light of the State's February, 1972 letter which very clearly put claimant on notice that no further increase would be forthcoming. Claimant cannot claim estoppel "merely because he thought, through some 'secret operation of his own mind'" (see *Wood v State of New York*, 12 NY2d 25, 28), that the State would waive the contract limit.

In the absence of substantial evidence, not in this record, that the State was aware that the $504,000 limit had been reached and nevertheless requested additional services, claimant cannot be successful on its claim that the State is estopped to assert as a defense the $504,000 ceiling price in the contract as supplemented; and hence on retrial, absent other proof of estoppel, claimant can in no event recover more than $9,783.90, that being the difference between what it has already been paid and the ceiling price.

The judgment should, therefore, be reversed and a new trial granted in accordance herewith.

DILLON, P. J., CARDAMONE, DOERR and MOULE, JJ., concur.

Judgment unanimously reversed, on the law and facts, without costs, and a new trial granted.