LAVERNE KUBISEN, Plaintiff-Appellant, *v.* CHICAGO HEALTH CLUBS, Defendant-Appellee.

First District (5th Division)   No. 78-25

Opinion filed February 23, 1979.

Nevoral and Corrigan, Ltd., of Chicago, for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal from an order granting summary judgment in favor of defendant presents issues as to whether (1) there existed a genuine fact

issue rendering summary judgment inappropriate; and (2) the order of summary judgment denied plaintiff due process of law.

Plaintiff sued for damages because of injuries allegedly resulting from defendant's negligence when she fell in a steam room in its athletic club. Defendant denied all pertinent allegations of the complaint and subsequently moved for summary judgment, alleging that no fact issue existed because a retail installment contract entered into by the parties contained an exculpatory clause releasing defendant from liability for any injuries sustained by plaintiff while using the club facilities.

The contract was attached as an exhibit and contained a number of provisions designated alphabetically from A through O, of which A through D were on the front of the one-page contract and E through O were on the back, with the parties having signed the agreement on the front. Defendant's motion was based upon the language of exculpation appearing in provision H, as follows:

"H. By the use of the facilities of CHC [defendant] and/or by the attendance at any of the gymnasiums owned by CHC, the Member expressly agrees that CHC shall not be liable for any damages arising from personal injuries sustained by the Member or his guest in, on or about the premises of the said gymnasiums or as a result of their using the facilities and the equipment therein. By the execution of this agreement Member assumes full responsibility of any such injuries or damages which may occur to the Member or guest in, on or about the premises of the said gymnasiums and further agrees that CHC shall not be liable for any loss or theft of personal property. Member assumes full responsibility for any injuries, damages or losses which may occur to Member or guest, in, on or about the premises of said gymnasiums and does hereby fully and forever release and discharge CHC and all associated gymnasiums, their owners, employees and agents from any and all claims, demands, damages, rights of action, or causes of action, present or future, whether the same be known or unknown, anticipated or unanticipated, resulting from or arising out of the Member's or his guests [sic] use or intended use of the said gymnasium or the facilities and equipment thereof."

Plaintiff filed no answer of counter-affidavits and, although it appears that a hearing was held before summary judgment was granted, no report or transcript of said hearing is in the record.

OPINION

Plaintiff first argues that the trial court erred in ordering summary judgment because a genuine issue of fact existed as to whether plaintiff had notice or knowledge of the exculpatory clause. In this regard, it is

clear that summary judgment should be granted where the record shows that no triable issue of fact exists. (*Lehndorff USA (Central) Ltd. v. Cousins Club, Inc.* (1976), 40 Ill. App. 3d 875, 879, 353 N.E.2d 171, 175; *Weber v. Woods* (1975), 31 Ill. App. 3d 122, 130, 334 N.E.2d 857, 862-63; *Sarelas v. Law Bulletin Publishing Co.* (1969), 115 Ill. App. 2d 205, 213, 253 N.E.2d 168, 172.) Plaintiff contends, however, that a factual issue as to such notice and knowledge arises from the contract itself in that (1) the clause in question appears on the back with other provisions; (2) the contract was signed by the parties on the front, which had no reference to the exculpatory clause on the back; and (3) the clause is set forth in "small" or "fine" print.

■■ We reject this contention primarily because the location of the clause in the contract, the size of its print, and the fact that there is no reference to the clause on the front page of the contract have no relevance unless plaintiff was unaware of the clause. It is clear from the record that it did not by answer, counteraffidavit, or otherwise assert any such lack of knowledge. Having made no such assertion, and because plaintiff may in fact have read both sides of the contract and become aware of the exculpatory clause, it would obviously be untenable for us to hold that a lack of knowledge should be presumed from the contract itself.

Further, plaintiff also does not indicate in any manner that she did not read or was unaware of the provisions on the front side of the contract where, just above her signature, the following words are clearly printed: "NOTICE TO THE BUYER"; and, adjacent thereto, the following: "Do not sign this agreement before you read it or if it contains any blank spaces." Further, provision A on the front side of the contract appears as follows: "A. Enrollment: Seller agrees to, and does hereby, sell, and Buyer agrees to, and does hereby, buy, on the terms and conditions hereinafter set forth (including the terms and conditions contained on the reverse side hereof) a membership in Seller's gymnasiums * * *." In the light of the foregoing, we reject plaintiff's contention that summary judgment was erroneously entered because a question of fact existed as to plaintiff's notice or knowledge of the clause.

Plaintiff's other contention is somewhat obscure. In her brief, she asserts initially that the order of summary judgment violated her due process rights as guaranteed by the fourteenth amendment. She presents two supporting arguments: that the enforcement of an exculpatory clause in a contract such as the one in question, wherein she states that a great disparity of bargaining power exists between the parties, is against public policy; and that the legislature has expressed a public policy against these exculpatory clauses in general. Thus, plaintiff appears to argue that if a clause in a contract violates public policy, the judicial enforcement of that clause is somehow violative of due process.

Initially, we note that the record is devoid of any indication that plaintiff raised these arguments in the trial court, and it is well established that an issue may not be raised for the first time on appeal, even where a motion for summary judgment is involved. (*Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637, 640, 350 N.E.2d 242, 245; *Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 934, 332 N.E.2d 32, 33; *Anderson "Safeway" Guard Rail Corp. v. Champaign Asphalt Co.* (1971), 131 Ill. App. 2d 924, 929, 266 N.E.2d 414, 418.) Thus, plaintiff has waived argument on these points.

■ Moreover, we reject plaintiff's arguments on their merits. First, we fail to see how enforcement of a contractual clause which runs contrary to public policy can be said to be a constitutional violation. The concept of public policy is a "principle of law which declares that no one may lawfully do that which has a tendency to be injurious to the public welfare." (*People ex rel. Nelson v. Wiersema State Bank* (1935), 361 Ill. 75, 86, 197 N.E. 537, 542; *Knass v. Madison and Kedzie State Bank* (1933), 354 Ill. 554, 567, 188 N.E. 836, 842.) While an act which may tend to be "injurious to the public welfare" might infringe upon a right protected by the fourteenth amendment, it is not necessarily so, and plaintiff has failed to present any authority or convincing argument as to how this might be occasioned in the instant case.

Plaintiff's other argument that a great disparity of bargaining power existed between her and defendant is not supported by any facts appearing in the record and, in any event, her contention that the enforcement of an exculpatory clause in such a situation would violate public policy was resolved in *Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App. 2d 344, 199 N.E.2d 280, where the court was faced with circumstances similar to those in the instant case. In *Owen*, plaintiff had signed a similar agreement with the operator of a health club containing an exculpatory clause covering injuries sustained on its premises. Plaintiff brought a negligence action against the operator for injuries allegedly occurring when she slipped and fell near the swimming pool on its premises. A trial court judgment for plaintiff was reversed on appeal where plaintiff contended that the disparity and bargaining power between her and defendant rendered the exculpatory clause violative of public policy. The *Owen* court stated:

> "The scarcity of facilities for gymnastic and reducing activities hardly creates such a disparity of bargaining power that plaintiff is forced to accept such terms without alternatives. If the public interest is involved, it is for the legislature to make such pronouncements. Absent appropriate legislative action, we must hold that the instant exculpatory clause barred plaintiff's suit * * *." 48 Ill. App. 2d 344, 348, 199 N.E.2d 280, 282.

■ We are not persuaded, as plaintiff suggests, that we should reconsider the position taken in *Owen* and, accordingly, we conclude there is nothing in the instant case indicative of a disparity of bargaining power of sufficient magnitude to require us to bar enforcement of the exculpatory clause on the basis of public policy.

■ Plaintiff also posits that the State legislature, in enacting "[a]n act making void and unenforceable certain agreements exempting lessors from liability * * *" (Ill. Rev. Stat. 1977, ch. 80, par. 91), which voids as against public policy certain exculpatory clauses in leases, has indicated that the clause in the instant case likewise runs contrary to public policy. That precise argument, however, was rejected in *Bers v. Chicago Health Clubs, Inc.* (1973), 11 Ill. App. 3d 590, 297 N.E.2d 360 (abstract), wherein this court noted, "if the legislature intended all exculpatory clauses to be void, it would have so provided."

We therefore hold that neither public policy nor due process considerations require us to reverse.

For the reasons stated above, the order of the trial court entering summary judgment in favor of defendant is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.