■ GRACE E. BEARDSLEE, Respondent, v ROBERT BLOMBERG et al., Appellants.—Appeal from an order of the Supreme Court at Special Term, entered August 14, 1978 in Chemung County, which denied a motion to dismiss the complaint. On July 22, 1977, plaintiff, while a spectator at defendant Chemung Speedrome, an auto race track owned and operated by defendant Robert Blomberg, responded to a call for participants from the grandstand and volunteered to take part in a "Powder Puff Derby", a stock car race for women. She sustained injuries when her vehicle struck a retaining wall of the race track allegedly as a result of defendant's negligence in providing her with an unsafe vehicle, a defective helmet and in failing to supply her with a fire suit. Defendants moved to dismiss the complaint upon the ground that plaintiff had signed a release prior to entering the derby. Releases absolving recreational facilities, including auto raceways, from liability for their negligence have been upheld provided certain qualifications were met (see *Ciofalo v Vic Tanney Gyms,* 10 NY2d 294; *Johnson v Thruway Speedways,* 63 AD2d 204; *Kotary v Spencer Speedway,* 47 AD2d 127; *Church v Seneca County Agric. Soc.,* 41 AD2d 787, affd 34 NY2d 571; *Gervasi v Holland Raceway,* 40 AD2d 574; *Solodar v Watkins Glen Grand Prix Corp.,* 36 AD2d 552). However, section 5-326 of the General Obligations Law (L 1976, ch 414, § 1), effective September 1, 1976, now provides, in part, that: "Every * * * agreement * * * in or in connection with, or collateral to any * * * ticket of admission * * * entered into between the owner or operator of any * * * place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable." Special Term concluded that under *Johnson v Thruway Speedways (supra),* where in dictum this court stated, without elaboration, that section 5-326 voids releases of liability for injuries arising

in connection with auto racing, the release signed by plaintiff was invalid. We disagree. *Johnson* merely considered the validity of a release executed by a spectator who was injured while watching a race; it did not address the issue presented by this appeal of whether a release executed by a participant in an auto race is valid. Therefore, *Johnson* is not controlling. Turning then to the statute's applicability, it voids releases "in or in connection with, or collateral to" tickets of admission. Here, plaintiff paid an entrance fee and had been admitted to the grandstand to watch the races. Later, in response to a call for participants from the grandstand, she volunteered to take part in a race. It was in this connection that she signed the release, and not in connection with her admission ticket. Thus, the statute by its terms is plainly inapplicable since the release was neither "in [n]or in connection with, or collateral to" plaintiff's admission ticket (see NY Legis Ann, 1976, p 71). The release absolves the defendants from liability for any injury plaintiff might sustain while in the "restricted area", which includes the race track proper. It does not, however, specifically refer to equipment furnished by the defendants. Releases from liability for negligence are closely scrutinized and strictly construed, and a release general in its terms will not bar claims outside the parties' contemplation at the time it was executed *(Johnson v Thruway Speedways, supra)*. Furthermore, since the release herein is not entirely free of ambiguity, an issue of fact exists as to whether the risk of faulty equipment or the failure to furnish essential equipment was within the contemplation of the parties at the time it was executed *(Lachs v Fidelity & Cas. Co. of N. Y.,* 306 NY 357, 364, mot for rearg den 306 NY 941; *Rogers v Niforatos,* 57 AD2d 984, 986). Order affirmed, without costs. Greenblott, J. P., Main and Herlihy, JJ., concur; Kane and Mikoll, JJ., concur in separate memoranda.

Kane, J. (concurring). While the footnote in *Johnson v Thruway Speedways* (63 AD2d 204, 205) that section 5-326 of the General Obligations Law voids releases of liability for injuries arising in connection with auto racing may have been dictum, I see no reason why it should not be applied in this case where the issue is squarely before us. The majority would distinguish *Johnson* from the case before us on the basis that the party signing the release in *Johnson* was a spectator while the signatory in this case was a participant. However, there is nothing in either the language of the statute or its legislative history to suggest that such a distinction was intended. In fact, a review of the legislative history of section 5-326 of the General Obligations Law plainly indicates that the Legislature, in drafting the statute to cover all "users" of recreational facilities, intended to overrule the holding of *Ciofalo v Vic Tanney Gyms* (10 NY2d 294) wherein the Court of Appeals upheld the enforceability of a contractual provision signed by a member of a gymnasium which insulated the gymnasium from liability for personal injuries resulting from its negligence (see Governor's Bill Jacket, L 1976, ch 414). Since the plaintiff in the case at bar is no less a "user" of a recreational facility than was the plaintiff in *Ciofalo,* it appears that releases such as those found in this case were the very ones which the Legislature deemed to be void as against public policy and wholly unenforceable. The majority's alternative argument that the statute is not applicable to this case since the release signed was not "in connection with, or collateral to" any ticket of admission alters what is, to me, the plain meaning of the statute. Accordingly, I would affirm the order of Special Term.

Mikoll, J. (concurring). I agree with the majority insofar as it affirms the

judgment of Special Term. However, I do not limit the grounds for such affirmance on those stated by the majority but would affirm on the ground that under section 5-326 of the General Obligations Law, the release executed by the plaintiff is void as against public policy. The interpretation placed on this statutory provision by the majority is too narrow. Section 5-326, insofar as relevant, reads: "Every * * * agreement * * * in or in connection with, or collateral to, any contract * * * entered into between the owner or operator * * * and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities". The plain meaning of this language includes the spectator plaintiff herein. She not only paid a fee to use the premises but her entry into the restricted area was conditioned upon her performance in the "Powder Puff Derby" a race staged for the entertainment of the customers of the Chemung Speedrome. It cannot be seriously maintained that the owner or operator of the race track did not receive "other compensation" by reason of the plaintiff's becoming a performer in the racing program. Voiding the release executed by this participant, in my view, clearly falls within the terms and the intent of section 5-326 of the General Obligations Law. It is also significant that this statutory provision was enacted with the specific purpose of overruling the holding of *Ciofalo v Vic Tanney Gyms* (10 NY2d 294), which involved the execution of a release in connection with a membership contract.