GREGORY N. LARSEN, Plaintiff-Appellee, v. VIC TANNY INTERNA-
TIONAL, Defendant-Appellant.

Fifth District   No. 5—84—0173

Opinion filed November 28, 1984.

Dennis E. Rose, of Donovan, Hatch & Constance, P.C., of Belleville, for appellant.

Churchill, Nester & McDonnell, of Belleville (Joseph B. McDonnell, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Defendant Vic Tanny International, a corporation, appeals the denial of its motion for summary judgment against plaintiff Gregory N. Larsen. The issue upon which defendant's motion hinges is the validity of an exculpatory clause in a contract between plaintiff and defendant. Upon denying defendant's motion, the circuit court of St. Clair County certified the question for interlocutory appeal pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308). We granted the appeal.

Plaintiff, a member of defendant's organization, alleged that he was injured while utilizing defendant's health club facilities. Plaintiff's complaint stated that plaintiff sustained serious internal injuries as a result of inhaling gaseous vapors. Plaintiff further alleged that his injuries were directly caused by one of the following acts or omissions of defendant:

"(a) Negligently and carelessly combining certain cleaning compounds in such a manner that an explosion of hydrochloric acid and gas occurred;

(b) Negligently and carelessly failing to warn defendant's patrons, including plaintiff, of the existence of vapors of hydrochloric acid;

(c) Negligently and carelessly failing to properly train and supervise its employees in the preparation and use of potentially explosive chemicals."

Plaintiff's membership contract contained the following provisions:

"By the use of the facilities of Seller and/or by the attendance at any of the gymnasiums owned by Seller, the Member expressly agrees that Seller shall not be liable for any damages arising from personal injury sustained by the Member or his guest in, on or about the premises of the said gymnasiums or as a result of their using the facilities and the equipment therein. By the execution of this agreement Member assumes

full responsibility for any such injuries or damages which may occur to the Member or guest in, on or about the said gymnasiums and further agrees that Seller shall not be liable for any loss or theft of personal property. Member assumes full responsibility for any injuries, damages or losses which may occur to Member or guest, in, on or about the premises of said gymnasiums and does hereby fully and forever release and discharge Seller and all associated gymnasiums, their owners, employees and agents from any and all claims, demands, damages, rights of action or causes of action, present or future, whether the same be known or unknown, anticipated or unanticipated, resulting from or arising out of the Member's or his guests' use or intended use of the said gymnasium or the facilities and equipment thereof."

Plaintiff admitted in his deposition that he read the membership contract before signing it.

■■ ■ The courts of Illinois have long held that, under appropriate circumstances, a person may by contract avoid liability for his or her negligence. (*Jackson v. First National Bank* (1953), 415 Ill. 453, 460, 114 N.E.2d 721.) In the absence of fraud or wilful and wanton negligence, exculpatory contracts will be enforced unless "(1) it would be against the settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement." (415 Ill. 453, 460, 114 N.E.2d 721.) Although exculpatory contracts or clauses are subject to the general rule that they are to be construed most strongly against their maker (*Halperin v. Darling & Co.* (1967), 80 Ill. App. 2d 353, 357, 225 N.E.2d 92), a specific reference to the maker's "negligence" or its cognates is not required. *Berwind Corp. v. Litton Industries, Inc.* (7th Cir. 1976), 532 F.2d 1, 4.

■■ ■ The obvious rationale behind this rule is that a plaintiff who expressly consents to relieve a defendant of an obligation of conduct toward the plaintiff assumes the risk of injury as a result of the defendant's failure to adhere to the obligation. (*Russo v. The Range, Inc.* (1979), 76 Ill. App. 3d 236, 238, 395 N.E.2d 10.) The doctrine of assumption of risk presupposes, however, that the danger which causes the injury is such that it ordinarily accompanies the activities of the plaintiff, and that the plaintiff knows or should know both the danger and the possibility of injury prior to its occurrence. (76 Ill. App. 3d 236, 237.) The standard to be applied is a subjective one geared to a particular plaintiff and her situation (*Provence v. Doolin* (1980), 91 Ill. App. 3d 271, 280, 414 N.E.2d 786), and the determina-

tion ordinarily will be made by a jury. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 430, 261 N.E.2d 305.) Specifically, the Illinois pattern jury instruction on assumption of risk pursuant to a contractual relationship requires proof that "the plaintiff knew these dangers [which caused the injury] existed and realized the possibility of injury from them or in the exercise of ordinary care would have known the dangers existed and realized the possibility of injury from them and entered into the [contract] voluntarily." Illinois Pattern Jury Instructions, Civil, No. 13.01 (2d ed. 1971).

▪ Foreseeability of a specific danger is thus an important element of the risk which a party assumes, and, for this reason, serves to define the scope of an exculpatory clause. This is but another way of stating that, although the type of negligent acts from which a person expressly agrees to excuse another need not be foreseen with absolute clarity, such acts cannot lie beyond the reasonable contemplation of the parties; or, as stated in a comment to the section of the Restatement (Second) of Torts recognizing the validity of express assumptions of risk: "In order for the agreement to assume the risk to be effective, it must also appear that its terms were intended by both parties to apply to the particular conduct of the defendant which caused the harm." (Restatement (Second) of Torts sec. 496B, comment d (1977).) No agreement to assume unknown risks shall be inferred. *Van Tuyn v. Zurich American Insurance Co.* (Fla. App. 1984), 447 So. 2d 318, 321.

▪ Plaintiff in the instant action claims injury resulting from defendant's act of mixing chemical compounds in a manner which produced an explosion of harmful vapors. The question upon which the enforceability of the exculpatory clause hinges is whether defendant's conduct and the risk of injury inherent in this conduct was of a type intended by the parties to fall within the scope of exculpation. Summary judgment is a drastic remedy, and should be granted only when, construing all the evidence most favorably to the nonmoving party, no genuine issue of fact is presented and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005; *Mitchell v. Simms* (1979), 79 Ill. App. 3d 215, 220, 398 N.E.2d 211.) Where any doubt exists regarding the right of a movant to summary judgment, *i.e.*, where fair-minded people could draw different inferences from the facts presented, the issue should be submitted to a trier of fact. (*Marciniak v. O'Connor* (1981), 102 Ill. App. 3d 381, 386, 430 N.E.2d 536.) It is our judgment that the question of whether defendant's conduct and the danger to which plaintiff was subjected was of a type intended by the parties to be excused by the exculpa-

tion clause in plaintiff's membership contract presents a genuine issue of fact which cannot be resolved by the evidence of record. The enforceability of the exculpatory provision is not, therefore, established as a matter of law.

A plaintiff's decision to assume the risk of injury resulting from a defendant's conduct attains efficacy only in a context in which the plaintiff may foresee the range of possible dangers to which he subjects himself, thus enabling the plaintiff to minimize the risk by altering his conduct in order to employ a proportionately higher degree of caution. A plaintiff agreeing to assume a risk of injury in partial exchange for the right to use gymnasium facilities could reasonably contemplate the possibility of injury resulting from slippery surfaces in or around a swimming pool (*Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App. 2d 344, 199 N.E.2d 280) or a steam room (*Kubisen v. Chicago Health Clubs* (1979), 69 Ill. App. 3d 463, 388 N.E.2d 44), and could, upon reflection, exercise increased care while utilizing these facilities. The assertion that such a plaintiff would necessarily contemplate the danger of combustible cleaning compounds being mixed in such a manner as to injure the plaintiff's respiratory system and that the plaintiff could accordingly exercise a more rigid standard of caution either by avoiding certain areas of the gymnasium or by altering his breathing habits while present in those areas is untenable according to the standards of common experience.

Defendant argues that the instant case presents the same essential fact pattern as that of *Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App. 2d 344, 199 N.E.2d 280, where the plaintiff, having signed an exculpatory agreement releasing the defendant from liability for personal injury sustained on or about the premises of a gymnasium of which plaintiff was a member, sued defendant for injuries plaintiff sustained as a result of slipping and falling in an area adjacent to a swimming pool. The appellate court held that the exculpatory clause did not refer only to injuries arising from the use of facilities which were not, in themselves, defective. The court further held that public policy did not forbid the enforcement of exculpatory clauses in contracts for membership in gymnasiums, since "[t]he scarcity of facilities for gymnastic and reducing activities hardly creates such a disparity of bargaining power that plaintiff is forced to accept such terms without alternatives." 48 Ill. App. 2d 344, 348.

We believe that *Owen* is distinguishable from the instant case, as we have explained, on the ground that the injury in *Owen* was of a type reasonably within the contemplation of the parties and, therefore, within the scope of the intended exculpation of liability. For this

reason, we do not reach the question of whether the exculpatory agreement in the instant action controverts public policy. We note, however, that certain developments in the statutory and case law of other jurisdictions, reflecting an evolution in societal attitudes, create some doubt as to whether the reasoning behind the 20-year-old *Owen* decision should be affirmed. The New York case of *Ciofalo v. Vic Tanny Gyms, Inc.* (1961), 10 N.Y.2d 294, 220 N.Y.S.2d 962, 177 N.E.2d 925, cited by the *Owen* court in support of the proposition that there existed "no over-riding public interest" compelling the court to hold ineffectual an exculpatory clause in a gymnasium membership contract, has been superseded by a statutory provision enacted for the express purpose of overruling the holding of *Ciofalo*. (N.Y. Gen. Oblig. Law sec. 5—326 (Consol. 1977); see *Beardslee v. Blomberg* (1979), 70 App. Div. 2d 732, 733, 416 N.Y.S.2d 855, 857 (Kane, J., concurring), 70 App. Div. 2d 732, 733, 416 N.Y.S.2d 855, 858 (Mikoll, J., concurring).) Moreover, noting that "the American public is obsessed with health and physical fitness" and that "we as a society benefit from a healthy, fit populace," two justices of the Supreme Court of Minnesota recently have taken the position that gymnasiums in fact offer the type of public service properly characterized as "essential," necessarily investing the owner with a decisive advantage of bargaining strength over any member of the public seeking her services. *Schlobohm v. Spa Petite, Inc.* (Minn. 1982), 326 N.W.2d 920, 927 (Wahl, J., dissenting).

The order of the circuit court denying defendant's motion for summary judgment is affirmed.

Affirmed.

WELCH, P.J., and KASSERMAN, J., concur.