IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 4, 2005 Session

## NATHAN & BRANDY HENDERSON V. QUEST EXPEDITIONS, INC.

### Direct Appeal from the Circuit Court for Polk County
No. CV-03-130      Hon. John B. Hagler, Circuit Judge

### No. E2004-02585-COA-R3-CV - FILED JUNE 8, 2005

In this action for personal injuries allegedly due to defendant's negligence, the Trial Court granted defendant summary judgment on the grounds that plaintiffs had executed a Waiver and Release of Liability which was required by defendant prior to plaintiffs' participation in white water rafting. Plaintiffs have appealed, insisting the Release is void as against the public policy of this State. We affirm.

### Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

H. Franklin Chancey, Cleveland, Tennessee, for appellants.

Gary A. Cooper, Chattanooga, Tennessee, for appellee.

### OPINION

Plaintiffs' Complaint alleged that Henderson was injured while on a white water rafting expedition operated by defendant. The Complaint alleged that defendant "ferries rafters to and from the Ocoee River by means of a series of dilapidated school buses.", and that after Henderson had completed his rafting trip, he and other rafters were put on a bus, and then told to get on another bus, and when disembarking from the first bus he slipped and fell, sustaining severe personal injuries. Plaintiffs further alleged that defendant's negligence was the proximate cause of his injuries.

Defendant in its Answer admitted that Henderson had participated in a rafting trip sponsored by defendant, and among its defenses raised was waiver, because plaintiff had signed a "Waiver and Release of Liability", which defendant attached to its Answer.

In their Answers to Requests for Admissions, plaintiffs admitted that the waiver in question had been signed by Henderson. Defendant then filed a Motion for Summary Judgment, which plaintiffs opposed and Henderson filed his Affidavit which stated that Henderson had no previous white-water rafting experience, and was given a pre-printed document to sign prior to the excursion which was not reviewed with him by an employee of defendant. He further stated that he was not advised whether there were any other rafting companies who would allow him to go rafting without having to sign a waiver, or whether he could pay additional money to not have to sign the waiver.

The Trial Court determined that the waiver in this case did not affect the public interest, and thus the waiver was not void as against public policy. The court noted that *Olson v. Molzen*, 558 S.W.2d 429 (Tenn. 1977) did not apply to this situation and he was guided by the rule adopted in California, which states that "exculpatory agreements in the recreational sports context do not implicate the public interest." Citing *Allan v. Snow Summit, Inc.*, 59 Cal. Rptr. 2d 813, 823 (Ca. App. 1996).

Plaintiffs on appeal insist the Waiver is void against public policy, and in the alternative, that the Waiver was void on the grounds it was too excessive in scope.

Plaintiffs concede that if the Waiver is enforceable then this action is barred, but argue the waiver violates the public policy of this State.

As our Supreme Court has explained:

It is well settled in this State that parties may contract that one shall not be liable for his negligence to another but that such other shall assume the risk incident to such negligence. . . . Further, it is not necessary that the word 'negligence' appear in the exculpatory clause and the public policy of Tennessee favors freedom to contract against liability for negligence.

*Empress Health and Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188 (Tenn. 1973).

An exception to this rule was recognized by the Supreme Court in *Olson v. Molzen*, wherein the Court held that certain relationships required greater responsibility which would render such a release "obnoxious". *Olson*, at p. 430. The Court adopted the opinion of the California Supreme Court in *Tunkl v. Regents of University of California*, 383 P.2d 441 (Ca. 1963), which held that where the public interest would be affected by an exculpatory provision, such provision could be held invalid. *Olson*, at p. 431.

Our Supreme Court adopted the six criteria set forth in *Tunkl* as useful in determining when an exculpatory provision should be held invalid as contrary to public policy. *See Olson.* These criteria are:

> (a.) It concerns a business of a type generally thought suitable for public regulation.

> (b.) The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

> (c.) The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

> (d.) As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

> (e.) In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

> (f.) Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Olson*, at p. 431.

In *Olson*, the Supreme Court invalidated a contract between a doctor and patient which attempted to release the doctor from liability for his negligence in the performance of medical services. *Also see Carey v. Merritt*, 148 S.W.3d 912 (Tenn. Ct. App. 2004) and *Russell v. Bray*, 116 S.W.3d 1 (Tenn. Ct. App. 2003). In *Russell*, this Court refused to enforce an exculpatory contract between home buyers and the home inspectors who were hired by the buyers, because the Court found that the home inspectors were professionals whose services affected the public interest, and thus the contracts were offensive to public policy, based on the factors enumerated in *Olson*. In *Carey*, this Court made clear that not all of the factors had to be present in order to invalidate an exculpatory agreement, but generally, the factors were limited to circumstances involving "a contract with a profession, as opposed to 'tradesmen in the marketplace'." *Carey*, at p. 916; *cf. Parton v. Mark Pirtle Oldsmobile-Cadillac-Isuzu, Inc.*, 730 S.W.2d 634 (Tenn. Ct. App. 1987) (auto repair shop is not "professional" as would qualify it as service affecting public interest in order to invalidate exculpatory contract).

This case is factually different from *Olson*, *Carey*, and *Parton* because the white-water rafting service offered by defendant is not a "professional" trade, which affects the public interest. As discussed in factor number two quoted above, this is not a service of "great importance to the public, which is often a matter of practical necessity for some members of the public." *See Olson*. There is no necessity that one go white-water rafting. In fact, many jurisdictions have recognized that such recreational sporting activities are not activities of an essential nature which would render exculpatory clauses contrary to the public interest. *See Seigneur v. National Fitness Institute, Inc.*, 752 A.2d 631 (Md. Ct. Spec. App. 2000) (health club services not essential for purposes of holding exculpatory clause unenforceable as offensive to public interest); *Allan v. Snow Summit, Inc.*, 59 Cal. Rptr. 2d 813 (Cal. Ct. App. 1996) ("voluntary participation in recreational and sports activities [skiing] does not implicate the public interest"); *Schutkowski v. Carey,* 725 P.2d 1057 (Wyo. 1986) (sky diving and other private recreational businesses generally do not involve services which are necessary to the public such that exculpatory contract would be invalidated).

Plaintiffs argue that the Release in this case does affect the public interest because the business involved, i.e. commercial white-water rafting, is subject to regulation. While this is true, the presence of this factor does not render this Release offensive to the public interest. In fact, recent legislation passed by the Tennessee Legislature "recognizes that the State has a legitimate interest in maintaining the economic viability of commercial white water rafting operations" because the State and its citizens benefit thereby. 2005 Tenn. Pub. Acts 169. This act states the legislative intent is to "encourage white water rafting by discouraging claims based on injury, death or damages resulting from risks inherent in white water rafting." *Id.* Thus, the Tennessee legislature has evidenced that the public policy of this State is that commercial white water rafting companies be protected from claims for injuries to patrons.

Accordingly we affirm the Trial Court's determination that the exculpatory contract in this case does not affect the public interest such that it should be invalidated pursuant to the *Olson* criteria.

Finally, appellants argue that the Release in this case should not operate as a bar to their claims because the injury suffered by Henderson was not within the "inherent risks" of the sport of white water rafting, and thus was not within the contemplation of the parties when the release was signed.

In the cases relied on by the plaintiffs regarding the scope of exculpatory provisions in the context of a sport, there are no provisions in those agreements which purport to release the defendant from its own negligence. For example, in *Johnson v. Thruway Speedways, Inc.*, 63 A.D.2d 204 (N.Y. App. Div. 1978), the Court refused to uphold a grant of summary judgment based on a release signed by the plaintiff prior to the sporting event. The Court stated that language of the release (which was not quoted in the opinion) "could lead to the conclusion that it only applied to injuries sustained by a spectator which were associated with the risks inherent in the activity of automobile racing". The plaintiff in that case was injured when he was hit by a maintenance vehicle

-4-

not involved in the race. *Id.* at 205. Thus, the Court held that this created a triable issue of fact as to whether the incident was of the type contemplated by the parties when the release was signed. *Id.*

Similarly, in the case of *Larsen v. Vic Tanny International*, 474 N.E.2d 729 (Ill. App. Ct. 1984), the plaintiff was injured when he inhaled dangerous vapors created by the negligent mixing of cleaning compounds by the defendant health club's employee. Plaintiff had signed a membership contract which contained exculpatory language regarding plaintiff's use of the facilities (but did not mention any negligence by defendant). *Id.* The Court stated this type of injury was arguably not foreseeable to plaintiff when he signed the release, and thus a fact question existed regarding the parties' intent behind the exculpation clause, which precluded summary judgment. *Id.*[1]

In another case where "negligence" is included in the release, *Sweat v. Big Time Auto Racing, Inc.*, 12 Cal. Rptr. 3d 678 (Cal. Ct. App. 2004), the plaintiff was injured when the pit-area bleachers collapsed. Plaintiff had signed a release before entering the pit area, which stated that he released the defendant from all liability "whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area and/or . . . observing . . . the event." *Id.* at 680. The Court found that the release was ambiguous due to the "and/or" language used, and thus relied on extrinsic evidence in interpreting the release, such as the fact that anyone could enter the pit area without signing the release once the race was over. The Court concluded that the release was only intended to apply to the risks inherent in being in close proximity to a race, and was not intended to cover the type of incident which occurred when the bleachers collapsed due to defective construction/maintenance. *Id.*

The majority view from sister states is that an exculpatory provision which specifically and expressly releases a defendant from its own negligence will be upheld, without regard to whether the injury sustained is one typically thought to be "inherent in the sport". In fact, there seems to be a split of authority among the states regarding whether the word "negligence" is even required to be present in the exculpation clause for the provision to be construed as releasing the defendant from its own negligence. Cases from Connecticut, for example, have held that in order for an exculpatory provision to be construed as releasing a defendant from its own negligence, the provision must expressly mention negligence . The cases are equally clear, however, that if the provision does expressly release the defendant from its own negligence, then it will be upheld as written. *See Hyson v. White Water Mtn. Resorts*, 829 A.2d 827 (Conn. 2003)(snowtubing); *Brown v. Sol*, 2004 WL 2165638 (Conn. Super. Ct. Aug. 31, 2004)(racing school); *DiMaggio v. LaBreque*, 2003 WL 22480968 (Conn. Super. Ct. Oct. 9, 2003) (parachuting).

Most jurisdictions, including Tennessee, have held that if the exculpation contract sufficiently demonstrates the parties' intent to eliminate liability for negligence, the absence of the word "negligence" is not fatal. *See Krazek v. Mountain River Tours, Inc.*, 884 F.2d 163 (4th Cir.

---

[1] The Court noted the result would have been different if plaintiff's injuries stemmed from a slip and fall in an area adjacent to a swimming pool, citing its previous decision in *Owen v. Vic Tanny Enterprises*, 199 N.E.2d 280 (Ill. App. Ct. 1964).

1989)(white water rafting); *Saenz v. Whitewater Voyages, Inc.*, 276 Cal. Rptr. 672 (Cal. Ct. App. 1991)(white water rafting); *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781 (Colo. 1989) (horseback riding); *Seigneur v. National Fitness Institute, Inc.*, 752 A.2d 631 (Md. Ct. Spec. App. 2000) (health club); *Petry v. Cosmopolitan Spa Intern., Inc.*, 641 S.W.2d 202 (Tenn. Ct. App. 1982)(health club); *Murphy v. North American River Runners, Inc.*, 412 S.E.2d 504 (W. Va. 1991) (white water rafting); *Schutowski v. Carey*, 725 P.2d 1057 (Wyo. 1986) (skydiving). In these cases, the fact that the injury occurred during an activity that was not foreseeable or not associated with a risk "inherent in the sport" did not matter. *See, e.g., Benedek* (health club member injured when adjusting a television set above exercise machines which fell); *Murphy* (white water rafter injured when her raft tried to engage in rescue of another raft), and Petry (patron of health club injured when exercise machine she was sitting on collapsed).

In this case, the Release in question does specifically and expressly release defendant from any liability for its negligence or that of any employees, owners, agents, etc. In the matter of contract interpretation, this Court has previously explained:

> The cardinal rule in the construction of contracts is to ascertain the intent of the parties. *West v. Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn. App.1984). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Cas. Co.*, 667 S.W.2d 79 (Tenn. App.1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat. Bank of Crossville*, 620 S.W.2d 526 (Tenn. App.1981). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W.2d 830, 22 A.L.R.2d 980 (1951).

*Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999).

The Contract under consideration is clear and unambiguous, and states that plaintiffs agreed to release defendant from any and all liability, including defendant's own negligence. Moreover, the Contract specifically mentions that plaintiffs are being furnished and participating in white water rafting and "bus or van transportation" provided by the defendant. The Contract states that plaintiffs realize that they could be injured due to dangers from the rafting as well as the use of white water equipment, forces of nature, or even due to the negligence of defendant's employees and other rafters. The Contract states that defendant is being relieved of any liability caused by its own negligence in no less than four places, the last of which is in bold print above the signature line. This

Contract is plain, and enforceable as written.  We conclude the Trial Court properly granted summary judgment to defendant on plaintiffs' negligence claims..

The Trial Court's Judgment is affirmed, and the cost of the appeal is assessed to plaintiffs Nathan and Brandy Henderson.

_____
HERSCHEL PICKENS FRANKS, P.J.