# Illinois Official Reports

## Appellate Court

---

*Hawkins v. Capital Fitness, Inc.*, 2015 IL App (1st) 133716

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL HAWKINS, Plaintiff-Appellant, v. CAPITAL FITNESS, INC., d/b/a X-Sport Fitness, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-13-3716 |
| Filed<br>Rehearing denied | March 4, 2015<br>April 2, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-10072; the Hon. William E. Gomolinski, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Keith L. Young, of Chicago, for appellant.<br><br>Loretta M. Griffin, Heather L. Nelson, and Ana Maria L. Downs, all of Law Offices of Loretta M. Griffin, of Chicago, for appellee. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Pucinski and Justice Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1　　　Michael Hawkins was at a fitness club working out with hand weights when suddenly a nearby mirror fell from the wall and struck him, causing injuries. Hawkins sued the fitness club, Capital Fitness, Inc., alleging it negligently failed to secure the mirror or warn patrons about the mirror and failed to cordon off the area around the mirror. Capital Fitness sought and obtained summary judgment on the basis of the exculpatory clause in its membership agreement. Hawkins argues the trial court erred in holding that the exculpatory clause bars his personal injury claim. Hawkins asserts that the incident is not within the scope of possible dangers ordinarily accompanying the use of a fitness club and a genuine issue of material fact exists as to whether his injury related to exercise. We agree and reverse.

¶ 2　　　　　　　　　　　　　　BACKGROUND

¶ 3　　Michael Hawkins purchased a membership with X-Sport Fitness, owned and operated by Capital Fitness. (In his brief, Hawkins states that at the time of the incident, he had a seven-day trial membership, but the record indicates Hawkins purchased a full membership and signed a membership agreement on January 5, 2010.) The membership agreement, under "Additional Terms and Conditions," included a clause entitled, "Disclaimers, Waiver, Release, and Indemnification." This clause, in bolded capital lettering, provided in relevant part:

> "MEMBER ACKNOWLEDGES THAT EXERCISE, TANNING AND USE OF THE EQUIPMENT AND FACILITIES OF THE COMPANY OR OF THEIR AFFILIATES NATURALLY INVOLVES THE RISK OF INJURY AND MEDICAL DISORDERS, INCLUDING DEATH, WHETHER MEMBER, SOMEONE ELSE, SOME ACTIVITY OR SOMETHING CAUSES IT. MEMBER AGREES THAT MEMBER ENGAGES IN ALL EXERCISE *** AND USES ALL FACILITIES AND SERVICES OF THE COMPANY AND THEIR FACILITIES, AT SUCH PERSON'S OWN RISK. SUCH ENGAGEMENT AND USE INCLUDES, WITHOUT LIMITATION, USE OF THE EQUIPMENT ***. YOU AGREE THAT YOU ARE VOLUNTARILY (A) PARTICIPATING IN THESE ACTIVITIES AND USING THE EQUIPMENT AND FACILITIES BASED ON SUCH PERSON'S OWN ASSESSMENT OF THE RISKS AND BENEFITS *** AND (B) ASSUMING ALL RISK OF INJURY ***.
>
> ***
>
> MEMBER SHALL HOLD COMPANY AND THEIR AFFILIATES *** HARMLESS FROM ANY AND ALL LOSS, CLAIM, INJURY, DAMAGE AND LIABILITY SUSTAINED OR INCURRED BY MEMBER FROM OR ARISING OUT OF THE NEGLIGENT ACTS AND OMISSIONS AND ALLEGED NEGLIGENT ACT AND OMISSIONS AND OTHER ACTS AND OMISSIONS, OF ANY OF THE RELEASED PARTIES, ANY PERSON AT THE FACILITY OR ANYONE ELSE, OR ANY OCCURRENCE ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ARISING OUT OF OR IN ANY WAY RELATED TO MEMBER'S PRESENCE AT OR USE OF THIS FACILITY *** WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, YOU AGREE *** TO RELEASE AND DISCHARGE RELEASED PARTIES FROM ANY AND ALL

CLAIMS OR CAUSES OF ACTION, AND DO HEREBY WAIVE ALL RIGHTS THAT YOU MAY HAVE *** TO BRING A LEGAL ACTION OR ASSERT A CLAIM, FOR INJURY OR LOSS OF ANY KIND AGAINST ANY OF THE RELEASED PARTIES ARISING OUT OF THE NEGLIGENT ACTS OR OMISSIONS OR OTHER ACTS OR OMISSIONS OF ANY OF THE RELEASED PARTIES OR ANYONE ELSE AT THE FACILITY *** OR ARISING OUT OF OR RELATING TO PARTICIPATION BY YOU IN ANY OF THE ACTIVITIES, OR YOUR USE OF THE EQUIPMENT, FACILITIES OR SERVICES ***. THIS HOLD HARMLESS FROM AND WAIVER AND RELEASE OF ALL LIABILITY INCLUDES, WITHOUT LIMITATION, (i) INJURIES, DAMAGES OR DISEASES WHICH MAY OCCUR AS A RESULT OF (A) YOUR USE OF ANY FACILITY OR ITS IMPROPER MAINTENANCE, (B) YOUR USE OF ANY EXERCISE *** EQUIPMENT, (C) IMPROPER MAINTENANCE OF ANY EXERCISE *** EQUIPMENT OR FACILITIES *** AND (ii) INJURIES OR MEDICAL DISORDERS RESULTING FROM EXERCISE, OR USE OF EQUIPMENT OR FACILITIES, AT THE FACTILITY OR ANY OF THE OTHER FACILITIES ***."

¶ 4    Hawkins did not read the agreement before signing it. Instead, he relied only on what a sales associate told him. According to Capital Fitness, however, sales associates lack sufficient familiarity with the contents of the agreement to explain it to members and, in any event, are instructed not to do so. Hawkins was given a copy of the agreement.

¶ 5    On January 27, 2010, Hawkins was working out at X-Sport's Logan Square gym (Hawkins's brief states the injury occurred on January 19, but the record indicates January 27). During his workout, Hawkins sat on a bench in front of a three-foot by eight-foot mirror hanging from a protruding portion of a wall. As Hawkins performed arm curls with free weights, a patron bumped into the mirror, dislodging it. Hawkins tried jumping out of the way, but his feet hit some weights scattered on the floor and he landed on a weight rack at which point the mirror hit his head.

¶ 6    An unidentified fitness club patron or employee told Hawkins that a maintenance crew had been working on the mirror before the accident. Hawkins then noticed a hole in the wall with supporting wire mesh pulled out and several missing tiles from the wall.

¶ 7    Hawkins filed a one-count complaint against Capital Fitness alleging negligent conduct in failing to adequately secure the mirror, failing to warn patrons that the mirror was loose and likely to fall, and failing to cordon off the area around the mirror. Capital Fitness moved for summary judgment, arguing that (i) the exculpatory language of the membership agreement barred Hawkins's claim for personal injury damages and (ii) Capital Fitness could not be held liable without proof of notice of an actual defect in the premises that proximately caused Hawkins's accident.

¶ 8    After a hearing, the trial court granted Capital Fitness's motion for summary judgment. The trial court enforced the exculpatory clause, finding (i) no substantial disparity in bargaining power between the parties; (ii) no public policy bar to enforcement; and (iii) nothing in the social relationship between the parties that would militate against upholding the clause. The trial court further held that Hawkins failed to provide evidence that Capital Fitness had actual or constructive notice of any defect concerning the mirror.

¶ 9 STANDARD OF REVIEW

¶ 10 "Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A triable issue of fact exists "where there is a dispute as to material facts, or where, the material facts being undisputed, reasonable persons might draw different inferences from the facts." (Internal quotation marks omitted.) *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 215 (2001). The movant for summary judgment has the initial burden of proof. *Beltran*, 2013 IL App (1st) 121128, ¶ 43. An appellate court reviews a disposition of summary judgment *de novo*. *Id.*

¶ 11 ANALYSIS

¶ 12 Execution of Membership Agreement

¶ 13 Hawkins initially claims the sales associates were unfamiliar with the language of the membership agreement and failed to point out or explain the exculpatory clause. Hawkins concedes that he did not read the agreement before signing it but suggests Capital Fitness employees had a duty to explain the release. Hawkins appears to argue that the circumstances surrounding the execution of the membership agreement should invalidate the exculpatory clause.

¶ 14 Generally, absent fraud, the act of signing legally signifies that the individual had an opportunity to become familiar with and comprehend the terms of the document he or she signed. An individual "who has had an opportunity to read a contract before signing, but signs before reading, cannot later plead lack of understanding." *Breckenridge v. Cambridge Homes, Inc.*, 246 Ill. App. 3d 810, 819 (1993). See also, *e.g.*, *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 40 (a person may not avoid legal consequences of an executed contract on the ground that the signing was done without knowledge of its contents); *State Bank of Geneva v. Sorenson*, 167 Ill. App. 3d 674, 681 (1988) ("[f]ailure to read a [contract] before signing it is normally no excuse for a party who signs it"); *Miller v. Wines*, 197 Ill. App. 3d 447, 452 (1990) (same).

¶ 15 Hawkins had a duty to read the membership agreement before he signed it. He did not ask for more time to review the document and no Capital Fitness employee prevented him from reading the agreement. Hawkins also received a copy of the agreement. There is no evidence, and Hawkins did not contend otherwise, that the sales associates made false representations to get him to enter the agreement or about its terms. Hence, nothing is raised by the circumstances of Hawkins's signing the agreement that would render the exculpatory clause unenforceable.

¶ 16 Scope of Exculpatory Clause

¶ 17 Hawkins primarily argues a question of fact exists as to whether his injury falls within the contractual limits of the exculpatory clause. Specifically, Hawkins asserts that his injury resulted from a possible danger beyond the ordinary risks accompanying the use of a fitness club membership.

¶ 18 A party may contract to avoid liability for his own negligence. *Garrison v. Combined Fitness Centre, Ltd.*, 201 Ill. App. 3d 581, 584 (1990). Absent fraud or willful and wanton negligence, a contract's exculpatory clause will be valid and enforceable unless (1) the

bargaining position of the parties reflects a substantial disparity, (2) enforcement violates public policy, or (3) the social relationship between the parties militates against upholding the clause. *Id.* Absent any of these factors, "the question of whether or not an exculpatory clause will be enforced depends upon whether or not defendant's conduct and the risk of injury inherent in said conduct was of a type intended by the parties to fall within the scope of the clause." *Masciola v. Chicago Metropolitan Ski Council*, 257 Ill. App. 3d 313, 317 (1993).

¶ 19 Because liability release clauses are highly disfavored, courts closely scrutinize them and they are strictly construed against the party seeking to rely on them. *Cox v. US Fitness, LLC*, 2013 IL App (1st) 122442, ¶ 14; *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 412 (2007). While usually worded broadly, an exculpatory clause "should contain clear, explicit, and unequivocal language referencing the types of activities, circumstances, or situations that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care." *Garrison*, 201 Ill. App. 3d at 585. At the time of contract formation, the parties do not have to contemplate the precise occurrence that later results in injury. *Id.* Nevertheless, the defendant must put the plaintiff on notice of the range of dangers for which the plaintiff assumes the risk of injury. *Id.* ("It should only appear that the injury falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff."); *Johnson v. Salvation Army*, 2011 IL App (1st) 103323, ¶ 36 (danger causing injury must ordinarily accompany activity covered by release).

¶ 20 The scope of the exculpatory clause depends on the foreseeability of a specific danger. *Larsen v. Vic Tanny International*, 130 Ill. App. 3d 574, 577 (1984). "The relevant inquiry *** is not whether plaintiff foresaw defendants' exact act of negligence, but whether plaintiff knew or should have known the accident was a risk encompassed by his [or her] release." (Internal quotation marks omitted.) *Cox*, 2013 IL App (1st) 122442, ¶ 14. Whether the particular injury ordinarily accompanies a certain activity and whether the plaintiff understands and assumes the risk associated with the activity often is a question of fact. *Hellweg v. Special Events Management*, 2011 IL App (1st) 103604, ¶ 6.

¶ 21 The membership agreement provided that "MEMBER ACKNOWLEDGES THAT EXERCISE, TANNING AND USE OF THE EQUIPMENT AND FACILITIES *** NATURALLY INVOLVES THE RISK OF INJURY ***." It further provides that "MEMBER ENGAGES IN ALL EXERCISE *** AND USES ALL FACILITES AND SERVICES *** AT SUCH PERSON'S OWN RISK." The agreement lists some uses of the facility covered by the agreement, including: the use of the equipment, locker room, showers, pool, basketball court, whirlpool, spa, spa services, sauna, steam room, tanning facilities, rock climbing wall, parking area, and sidewalk. The agreement holds Capital Fitness harmless from injury sustained or incurred from negligent acts or omissions "ARISING OUT OF OR IN ANY WAY RELATED TO MEMBER'S PRESENCE AT OR USE OF THIS FACILITY." The release includes a member's "USE OF ANY FACILITY OR ITS IMPROPER MAINTENANCE *** USE OF ANY EXERCISE [EQUIPMENT] *** OR FACILITIES WHICH MAY MALFUNCTION OR BREAK *** [AND] IMPROPER MAINTENANCE OF ANY EXERCISE *** EQUIPMENT OR FACILITIES."

¶ 22 A literal reading of the membership agreement reveals that Hawkins released Capital Fitness of all liability from injury, no matter the source, cause, or circumstance. For example, the agreement includes injury caused by a patron's use of the exercise equipment itself, such as a weight machine breaking. Because an exculpatory clause is strictly construed against the

- 5 -

party it benefits (*Evans*, 373 Ill. App. 3d at 412), the clause must identify the range of dangers for which risk of injury is being assumed. See *Larsen*, 130 Ill. App. 3d at 578 ("A plaintiff's decision to assume the risk of injury resulting from a defendant's conduct attains efficacy only in a context in which the plaintiff may foresee the range of possible dangers to which he subjects himself ***.").

¶ 23    To be sure, at the time the membership agreement was signed, Hawkins and Capital Fitness did not contemplate that Hawkins might be struck by a mirror. The record indicates that the Logan Square X-Sport facility had a number of mirrors. Indeed, two longer mirrors were on each side of the protruding portion of the wall. Should Hawkins have known a mirror falling off a wall was within the range of danger ordinarily accompanying the use of a fitness facility? Nothing in the record shows that Hawkins knew or should have known that this particular danger accompanied his working out at the facility.

¶ 24    *Larsen v. Vic Tanny International*, 130 Ill. App. 3d 574 (1984), is instructive. In *Larsen*, the plaintiff sustained injuries after inhaling gaseous vapors emitted from the health club's cleaning compounds. *Larsen*, 130 Ill. App. 3d at 575. Before joining the health club, the plaintiff read and signed a broad exculpatory agreement, releasing the health club from any damages arising from personal injury sustained " 'on or about the premises.' " *Id.* at 575-76. The court held that a genuine issue of fact remained as to whether a member's exposure to gaseous vapors was a danger intended by the parties to be excused by the exculpatory clause. *Id.* at 577-78. The court explained that an exculpatory clause "attains efficacy only in a context in which the plaintiff may foresee the range of possible danger to which [the plaintiff] subjects himself [or herself]." *Id.* at 578. The court then found the assertion that a plaintiff could contemplate the danger of combustible cleaning compounds in a health club, and thereby alter one's behavior, "untenable according to the standards of common experience." *Id.*

¶ 25    Like *Larsen*, we are unable to hold, as a matter of law, that a falling mirror is a danger within the scope of the exculpatory clause. As the court in *Larsen* explained, "[f]oreseeability of a specific danger is *** an important element of the risk which a party assumes, and, for this reason, serves to define the scope of an exculpatory clause. *** No agreement to assume unknown risks shall be inferred." *Id.* at 577. As the record illustrates, the Logan Square X-Sport contains a number of mirrors. If Hawkins foresaw the possible danger of a mirror coming unhinged, he would need to exercise a proportionately higher degree of caution around them, which would prevent him, or any member for that matter, from fully using portions of the facility near a mirror. Should Hawkins have worn protective equipment, like a helmet, to militate against the risk? Is Hawkins (and every member) expected, for safety purposes, to conduct a personal, comprehensive investigation of all aspects of the facility, including the quality and fit of every mirror? Like *Larsen*, the assertion that Hawkins would necessarily contemplate the danger of a mirror detaching from the wall and accordingly follow a more rigid standard of caution, either by avoiding certain areas or in some other way altering habits while present in those areas, is "untenable according to the standards of common experience." *Id.* at 578.

¶ 26    Moreover, Hawkins's injury is distinguishable from those suffered in *Garrison v. Combined Fitness Centre, Ltd.*, 201 Ill. App. 3d 581 (1990), *Kubisen v. Chicago Health Clubs*, 69 Ill. App. 3d 463 (1979), and *Owen v. Vic Tanny's Enterprises*, 48 Ill. App. 2d 344 (1964). In *Garrison*, the plaintiff's trachea was crushed when a weighted bar fell from a bench press apparatus the plaintiff was preparing to use. *Garrison*, 201 Ill. App. 3d at 583. In *Kubisen*, the

plaintiff suffered injuries after she fell in a steam room within the athletic club. *Kubisen*, 69 Ill. App. 3d 463. In *Owen*, the plaintiff injured her wrist when she slipped and fell as she left the club's swimming pool. *Owen*, 48 Ill. App. 2d at 345. In each of these cases, the injuries occurred while the plaintiffs engaged in activities ordinarily associated with, engaged in, and performed at the facility at which they were injured. Hence, the plaintiffs could reasonably contemplate the possibility of injury resulting from a weight lifting apparatus or slippery surfaces in the steam room and around the swimming pool.

¶ 27    Capital Fitness's reliance on *Schlessman v. Henson*, 83 Ill. 2d 82 (1980), and *Maness v. Santa Fe Park Enterprises, Inc.*, 298 Ill. App. 3d 1014 (1998), does not necessitate a contrary result. In *Schlessman*, the plaintiff, an experienced amateur stock-car racer, crashed his race car after a portion of the upper track embankment collapsed. *Schlessman*, 83 Ill. 2d at 84. Before the race, the plaintiff signed a release agreeing not to hold the track liable for any injuries suffered as a result of its negligence or otherwise. *Id.* The Illinois Supreme Court concluded that, by adopting the broad language of the release, it was reasonable that the parties "contemplated the similarly broad range of accidents which occur in auto racing." *Id.* at 86. The court reasoned that racing at high speeds in limited areas gives rise to a "myriad of factors," obvious or unknown, which may result in unexpected and freakish accidents. *Id.* The court explained that "[e]xperienced race drivers, such as plaintiff, are obviously aware of such occurrences and the risks attendant to the sport of auto racing." *Id.* Although the parties may not have contemplated the precise occurrence, this alone did not render the exculpatory clause inoperable. *Id.* Finally, the court noted that, as designed, the release encompassed all claims against the defendant based on its negligence or otherwise because "[t]he very nature of the parties' activity requires this result." *Id.*

¶ 28    In *Maness*, the decedent, a 51-year-old experienced racer, suffered a fatal heart attack while participating in a stock car race. *Maness*, 298 Ill. App. 3d at 1016. Before the race, the decedent signed three broad releases, discharging the defendants "from all liability for his injury or death whether caused by the negligence or gross negligence of defendants or otherwise." *Id.* The court, relying on *Schlessman*, found that the releases were designed to cover all claims against the defendants based on their negligence, "including their alleged negligent delay in providing medical assistance." *Id.* at 1020. The court concluded that the risk of requiring medical attention during a race ordinarily accompanies the "dangerous sport of auto racing." *Id.* The court then reasoned that incidents requiring medical attention are common at racetracks. *Id.* Thus, the decedent, "as an experienced racer, expected prompt and adequate medical care at every race. Likewise, he should have expected that negligence on the part of defendants regarding the medical care provided was possible and could result in serious injury or death to participants in the race." *Id.* Ultimately the court concluded that "[t]he risk of requiring medical attention during a race *** is one that ordinarily accompanies auto racing ***. [The decedent] accepted this risk and agreed to exculpate defendants from any alleged negligence in connection with it when he executed the broad releases ***." *Id.* at 1021.

¶ 29    Unlike *Schlessman* and *Maness*, we cannot conclude, as a matter of law, that the risk of a mirror falling on a patron ordinarily accompanies the use of a fitness facility. In *Schlessman* and *Maness*, it was reasonable to conclude that auto racing participants accept accidents and medical attention as part of the sport. But nothing in the record suggests that a mirror falling off a fitness club's wall is an ordinary or reasonable risk in this case.

¶ 30 True, Hawkins and Capital Fitness did not need to specifically foresee the precise incident at the time that Hawkins signed the membership agreement. Even so, *Schlessman* and *Maness* do not stand for the proposition that a broad exculpatory clause covers any conceivable claim. *Simpson v. Byron Dragway, Inc.*, 210 Ill. App. 3d 639 (1991), provides clarification. In *Simpson*, the decedent, a licensed and experienced race car driver, was killed when his dragster collided with a deer during a race. *Simpson*, 210 Ill. App. 3d at 641. Before the race, the decedent signed a release in which he agreed to inspect the track and adjacent areas to ensure that they were properly designed, maintained, and safe for race purposes. *Id.* at 642. The decedent also voluntarily assumed " 'all risks arising from conditions related to use of the track area by myself or others.' " *Id.* The appellate court reversed the trial court's grant of summary judgment based on the release. *Id.* at 649. The court initially noted that to effectively assume the risk of some occurrence, "it must be demonstrated that the danger which caused the injury was one which ordinarily accompanied the activity and that the plaintiff knew, or should have known, that both the danger and the possibility of injury existed before the occurrence." *Id.* at 647. The court rejected the argument that the decedent, by virtue of his participation in an inherently dangerous activity, contemplated a wide range of incidents, including the possibility that an animal would run onto the racetrack. *Id.* at 648. The court noted that *Schlessman* "did not hold that the range of accidents contemplated is without limit." *Id.* Thus, the court concluded that the danger of a deer running onto a racetrack was not the type of risk that ordinarily accompanies auto racing, and, therefore, a question of fact remained. *Id.* at 649.

¶ 31 Like *Simpson*, reasonable minds could differ on the issue of whether the incident here is an ordinary risk associated with the use of a fitness facility. "Whether a particular injury is one which ordinarily accompanies a certain activity and whether a plaintiff appreciates and assumes the risks associated with the activity often constitute a question of fact." *Simpson*, 210 Ill. App. 3d at 647. Because a broad release does not encompass all accidents without limit (*Simpson*, 210 Ill. App. 3d at 648), a genuine issue of fact arises as to whether the exculpatory clause in the membership agreement includes potential injury due to a mirror falling off a wall.

¶ 32 Notice of Defect

¶ 33 The trial court also granted summary judgment because Hawkins did not present any evidence that Capital Fitness had notice of the defective condition of the mirror. A premises liability plaintiff must prove, among other things, that the "landowner knew or in the exercise of ordinary care should have known of both the condition and the risk the condition posed to others lawfully on the property." *Smart v. City of Chicago*, 2013 IL App (1st) 120901, ¶ 46. In granting Capital Fitness's motion for summary judgment, the trial court stated, "it is incumbent upon the plaintiff to show me some affirmative matter, something, a scintilla of evidence to show that there was some type of actual or constructive notice, and the court cannot find any material issue of fact that would indicate that there is other than what is pure speculation and conjecture."

¶ 34 The premise underlying this portion of the trial court's ruling and Capital Fitness's argument is that Hawkins pursued a premises liability cause of action. Our review of Hawkins's one-count complaint, however, establishes that it sounds in negligence, not premises liability, and therefore, lack of evidence concerning notice is both inapplicable and irrelevant.

¶ 35                                CONCLUSION

¶ 36          The trial court erred in granting defendant's motion for summary judgment.

¶ 37          Reversed and remanded.