IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on briefs, February 14, 2006

## AHMED USSO and GENET AYELE v. BRYAN WINSTON

**Direct Appeal from the Chancery Court for Washington County**
**No. 36265    Hon. G. Richard Johnson, Chancellor**

---

**No. E2005-01746-COA-R3-CV - FILED MARCH 31, 2006**

---

Plaintiffs sued to recover earnest money tendered with a contract to purchase realty.  Defendant counter-sued for breach of contract and damages.  The Trial Court Ordered the return of the earnest money to plaintiffs.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J. joined, and D. MICHAEL SWINEY, J. dissented and filed a separate opinion.

Michael S. Lattier, Kingsport, Tennessee, for appellant.

James D. Culp, Johnson City, Tennessee, for appellees.

**OPINION**

In this action plaintiffs sought to recover their earnest money paid at the time of entering a contract to purchase a house in Gray, Tennessee from defendant, Bryan Winston.  Winston filed an Answer and Counter-Claim, alleging the plaintiffs had breached their contract and were not entitled to the return of their earnest money.

The Complaint alleged that plaintiffs had negotiated a contract with Winston for a purchase price of $392,500.00 and then posted a $5,000.00 earnest money deposit.  The contract provided that plaintiffs would obtain a loan for 80% of the purchase price on a fifteen-year repayment term.  Plaintiffs averred that they had applied for a loan from two sources, but were declined by the first source for lack of sufficient income, and declined for a fifteen-year loan from the second source, and since they could not obtain a loan under the conditions of the contract, they

were entitled to a refund of the earnest money.

In the Answer, Winston stated that he was a contractor and built the house in question, and based on the plaintiffs' representations, he put in finishes specifically requested by plaintiffs. He admitted that the contract was conditional upon plaintiffs' ability to obtain a loan for 80% of the purchase price, for a term of fifteen years, but charged that plaintiffs were required to pursue qualification for the loan diligently and in good faith. He concluded that plaintiffs breached the contract and caused him to incur damages and under the terms of the contract plaintiffs had forfeited their earnest money, and should be liable to him for damages and attorney's fees.[1]

The Court conducted an evidentiary hearing on November 18, 2004. At the conclusion of the hearing the Court issued its Opinion from the bench. The Court found that the contract was conditioned upon plaintiffs getting a loan for 80% of the purchase price, with a term of 15 years, and that plaintiffs had to be "qualified to receive the loan described herein based upon lender's customary and standard underwriting criteria."

The Court found that plaintiffs did immediately try to obtain a loan, and they were turned down by both Greene County Bank and First Bank and Trust, and that plaintiffs then went to Elizabethton Federal, where there was a conflict in testimony because plaintiffs said they signed a blank application, and Sam Crowder who is a loan officer at Elizabethton Federal, said the application was filled in when they signed it. The Court found that plaintiffs signed the application in blank, and that Crowder completed it, and submitted it to the board for a thirty year loan. The Court found that the thirty year loan was not approved until the bank received income verification. The Court said:

> Now, I guess you could say they approved it subject to or you could say they disapproved it subject to. I think that they approved the loan, but they did not approve the loan. They disapproved the loan. They didn't approve it; they disapproved it. And they said, "We're not going to approve it until we get income verification. This loan is not made. This loan is not approved. This loan – no money shall go out of this bank on this loan until we get income verification" of the Plaintiffs.

The Court found that Crowder tried to call plaintiffs' home twice and got no answer, but never called their business phone, so "this banker doesn't want to make this loan too badly." The Court further found that if Crowder had contacted the plaintiffs and gotten their income verification the loan would have been approved and they would have accepted a loan, even if it was for thirty years. The Court found the plaintiffs never knew their loan could have been approved by

---

[1]Realty Executives paid the earnest money into court and were preliminarily dismissed from the suit, as were Pardue and Blue Ridge.

Elizabethton Federal, and that was not their fault, and thus awarded plaintiffs a refund of their earnest money and dismissed the counterclaim.

This appeal presents these issues:

1.      Did the Court err in finding that plaintiffs acted diligently and in good faith where the plaintiffs were approved for a loan subject only to providing a tax return, but failed to provide the return and close the loan?

2.      When the bank loan officer testified that the bank approved a loan subject only to the plaintiffs providing a copy of their tax return, did the Trial Court err in finding that the bank disapproved the loan?

3.      Did the Trial Court err in finding that the plaintiffs applied for a fifteen year loan, when the bank officer testified that the plaintiffs only applied for a thirty year loan?

4.      Did the Trial Court err in finding that the bank officer was required to communicate with plaintiffs in the manner provided in the contract?

The contract between the parties provides:

This Agreement is made conditioned upon Buyer's ability to obtain a loan in the principal amount of 80% of the purchase price listed above, to be secured by a deed of trust on the Property; the loan to be paid in consecutive monthly installments of principal and interest over a term of 15 years. "Ability to obtain" as used herein means that Buyer is qualified to receive the loan described herein based upon lender's customary and standard underwriting criteria.

* * *

The Buyer agrees to (a) make application for the loan within five business days from the Binding Agreement Date, (b) immediately notify Seller's representative of having applied for the loan and the name of the lender, (c) pursue qualification for and approval of the loan diligently and in good faith, (d) pay any fees necessary to complete full loan processing and approval, and require lender to order credit report and appraisal within two days of application, (e) continually and immediately provide requested documentation to lender. . . . Buyer may also apply for a loan with different terms and conditions and also close the transaction provided all other terms and conditions of this Agreement are fulfilled, and the new loan does not increase any costs charged to the Seller. Buyer shall be obligated to close this transaction if Buyer has the ability to obtain a loan with terms as described herein and/or any other loan for which Buyer has applied and been approved.

-3-

The contract further states that if the plaintiffs default, "the Earnest Money shall be forfeited as partial liquidated damages, and Seller may sue, in contract or tort, for additional damages or specific performance of the Agreement, or both. . . . In the event that any party hereto shall file suit for breach of enforcement of this Agreement (including suits filed after closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees."

In *Henderson v. Quest Expeditions, Inc.*, 174 S.W.3d 730 (Tenn. Ct. App. 2005) we said:

> The cardinal rule in the construction of contracts is to ascertain the intent of the parties. If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made.

The language in the parties' contract is clear, plaintiffs had to close on the house if they had the "ability to obtain a loan with terms as described herein and/or any other loan for which Buyer has applied and been approved", and the "ability to obtain" was defined as being "qualified to receive the loan described herein based upon lender's customary and standard underwriting criteria." Moreover, plaintiffs had to "pursue qualification for and approval of the loan diligently and in good faith."

The Court found that Elizabethton Federal did not approve a loan for plaintiffs, nor did it communicate to plaintiffs that the loan would be approved subject to income verification, and that plaintiffs never knew their loan could have been approved and concluded that plaintiffs had acted diligently and in good faith.

Findings of fact are reviewed *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No such presumption attaches to the Trial Court's conclusions of law. *Id.*

The evidence at trial preponderates that Elizabethton Federal did approve a 30 year loan for plaintiffs, subject only to getting a copy of another year's income tax return (they already had one). Crowder testified that plaintiffs were approved for the thirty year loan at 6 ½ % interest on August 15, 2003. Crowder's testimony on this point is unrefuted, and is supported by the exhibits. Crowder's testimony is also corroborated by plaintiffs' Answer, wherein they stated that "a representative of Elizabethton Federal told the Plaintiffs that they were approved for a 30 year loan, but not a 15 year loan."

Plaintiff testified in Court, however, that he did not hear anything from the bank for "days" and that he told his realtor he was ready to move on, even after she told him she thought the loan might be approved, and offered to call and check on it for him. Significantly, the Complaint states that Elizabethton Federal tried to qualify them for a thirty-year loan, but they did not want it. Usso's testimony at trial was he did not want a thirty year loan, because he thought he would have to pay too much interest.

The Court tended to fault Crowder and Elizabethton Federal for not notifying plaintiffs their loan was approved pending receipt of a tax return. Plaintiffs had certain obligations under the contract, including the obligation to pursue a loan on the home and try to close on it with diligence and good faith.

Plaintiffs applied for loans from three different lending institutions and their applications were rejected by two. An official of the third testified that that institution would have made a 30 year loan to plaintiffs, provided they got additional financial information from plaintiffs. However, that institution never requested additional information from the plaintiffs. We conclude, as the Trial Court did, that the plaintiffs acted in good faith and diligence, and are entitled to a refund of their earnest money.

The Judgment of the Trial Court is affirmed and the cause remanded. The cost of the appeal is assessed to Bryan Winston.

_____
HERSCHEL PICKENS FRANKS, P.J.

-5-